Mason K. PETTIBONE, Petitioner,

v.

**PENNSYLVANIA BOARD
OF PROBATION AND
PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 12, 2001.

Decided Aug. 16, 2001.

Reargument Denied Oct. 22, 2001.

Joseph P. Burt, Erie, for petitioner.

Susan M. Zeamer, Harrisburg, for respondent.

Before SMITH, Judge, FRIEDMAN, Judge, and JOSEPH F. McCLOSKEY, Senior Judge.

FRIEDMAN, Judge.

Mason K. Pettibone (Pettibone) petitions for review of the October 4, 2000 order of the Pennsylvania Board of Probation and Parole (Board), which dismissed Pettibone's administrative appeal as untimely. We reverse.

On April 20, 1998, Pettibone was released on parole from Quehanna Motivational Boot Camp to the state of New York, where he was to reside with his mother. (O.R. at 2–6, 14.) Condition No. 3(b) of the conditions governing his parole stated that Pettibone was required to notify parole supervision staff within seventy-two hours of an arrest. (O.R. at 4.)

On October 5, 1998, the Board received a parole violation report from the state of New York indicating that Pettibone had been arrested on September 10, 1998 for a drug offense and failed to notify his parole officer of the arrest within seventy-two hours, a violation of Condition No. 3(b) of his parole. (O.R. at 9–10.) On November 4, 1998, the Board issued a warrant to detain Pettibone and return him to the custody of the Board. (O.R. at 13.)

On November 19, 1998, Pettibone pled guilty to the drug charge, and, pending sentencing, the trial court in New York released Pettibone on his own recognizance. The court released Pettibone in order to activate the Board's detainer warrant and allow the Board to address Pettibone's parole violation. (O.R. at 91, 93, 101, 102.) The court set sentencing for January 19, 1999, believing that this would give the Board sufficient time to retrieve Pettibone and dispose of his parole violation. (O.R. at 101–02.) Pettibone entered his guilty plea with the understanding that his sentence would be equal to, and would run concurrent with, the backtime Pettibone received from the Board for his parole violation. (O.R. at 93–94.)

At sentencing on January 19, 1999, the district attorney informed the court that the Board had not "picked up" Pettibone to deal with the parole violation. (O.R. at 104, 105.) Nevertheless, the court proceeded to sentence Pettibone, giving him a term of two to six years, to run concurrently with any backtime subsequently imposed by the Board for the parole violation. (O.R. at 65, 110.) After sentencing, the Board still did not retrieve Pettibone. Pettibone served his new sentence in New York until his release on parole on May 5, 2000. (O.R. at 39–40, 46, 67.) At that time, Pettibone finally was returned to Pennsylvania in the custody of the Board. (O.R. at 39–40, 67.)

The Board held Pettibone's violation/revocation hearing on June 5, 2000. Pettibone admitted at the hearing that he had been convicted of a drug offense in New York. However, he challenged the timeliness of the revocation hearing based on the Board's failure to retrieve him from New York when he was available. Pettibone also argued that he did not violate Condition No. 3(b). Pettibone testified that he was under the impression that he could report the September 10, 1998 arrest to his parole agent through his parents.

(O.R. at 34–35.) Thus, when Pettibone was given only one phone call and was in quarantine for three days, he telephoned his parents and asked them to report his arrest to the parole agent within seventy-two hours, and they did so. (O.R. at 30–31, 35.) Pettibone's New York parole agent, however, found this unacceptable because Pettibone did not personally report the arrest. (O.R. at 31, 35.)

In a decision mailed on August 3, 2000, the Board found that Pettibone failed to notify his New York parole agent about his arrest within seventy-two hours, a violation of Condition No. 3(b), and recommitted him to serve six months backtime as a technical parole violator (TPV). The Board also found that Pettibone had been convicted of a new criminal offense and recommitted him to serve six months backtime as a convicted parole violator (CPV). Thus, Pettibone received a total of twelve months backtime. (O.R. at 117.)

Pettibone filed a *pro se* administrative appeal, dated August 28, 2000, with the Board. (O.R. at 119–20.) The Board received the administrative appeal on September 6, 2000 in an envelope showing a U.S. Postal Service postmark of September 1, 2000. Because the Board did not receive the appeal within thirty days of the August 3, 2000 mailing date of the decision,[1] the Board dismissed the appeal as untimely.[2] (O.R. at 123.) Pettibone now petitions this court for review of the Board's decision.[3]

Pettibone argues that the Board erred in dismissing his administrative appeal as untimely, asserting that the Board should have applied the "prisoner mailbox rule" here. We agree.

In *Smith v. Pennsylvania Board of Probation and Parole,* 546 Pa. 115, 683 A.2d 278 (1996), our supreme court held that a state appellate court shall consider a *pro se* prisoner's appeal from a governmental agency decision to be filed when such appeal is deposited with prison officials or placed in the prison mailbox. The court offered the following rationale in support of its holding:

> The situation of prisoners seeking to appeal without the aid of counsel is unique. Such prisoners cannot take the steps other litigants can take to monitor the processing of their notices of appeal and to ensure that the court clerk receives and stamps their notices of appeal before the 30–day deadline. Unlike other litigants, pro se prisoners cannot personally travel to the courthouse to see that the notice is stamped "filed" or to establish the date on which the court received the notice. Other litigants may choose to entrust their appeals to the vagaries of the mail and the clerk's process for stamping incoming papers, but only the pro se prisoner is forced to do so by his situation. And if other liti-

1. The Board's regulation at 37 Pa.Code § 73.1(a)(1) states that an appeal from a revocation decision "shall be received at the Board's Central Office within 30 days of the mailing date of the Board's order."

2. In dicta, the Board stated that Pettibone's violation/revocation hearing was timely because the Board had no duty or power to retrieve Pettibone from New York until April 26, 2000, when authorities from that state notified the Board that Pettibone was available. Pettibone apparently accepts the Board's explanation because he does not challenge the timeliness of his violation/revocation hearing in the brief he has filed with this court.

3. Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

gants do choose to use the mail, they can at least place the notice directly into the hands of the United States Postal Service (or a private carrier); and they can follow its progress by calling the court to determine whether the notice has been received and stamped, knowing that if the mail goes awry they can personally deliver notice at the last moment or that their monitoring will provide them with evidence to demonstrate either excusable neglect or that the notice was not stamped on the date the court received it.

*Smith*, 546 at 121–22, 683 A.2d at 281 (quoting *Houston v. Lack*, 487 U.S. 266, 270–71, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988)). Since *Smith*, our supreme court has extended the "prisoner mailbox rule" to *all* appeals filed by *pro se* prisoners in the state appellate courts. *Commonwealth v. Jones*, 549 Pa. 58, 700 A.2d 423 (1997).

■ At the heart of the "prisoner mailbox rule" are the constitutional notions of due process and fundamental fairness.[4] *See Commonwealth v. Castro*, 766 A.2d 1283 (Pa.Super.2001) (stating that these concepts permeate the "prisoner mailbox rule"). As this court has stated, due process is a flexible notion derived from the Fourteenth Amendment that calls for such procedural safeguards as a particular situation demands to ensure fundamental fair-

ness to a litigant. *Harris v. Pennsylvania Department of Corrections*, 714 A.2d 492 (Pa.Cmwlth.1998). Thus, it was by design that, in *Smith*, our supreme court held "that *in the interest of fairness*, a *pro se* prisoner's appeal shall be deemed to be filed on the date that he delivers the appeal to prison authorities and/or places his notice of appeal in the institutional mailbox." *Smith*, 546 Pa. at 122, 683 A.2d at 281 (emphasis added).

■ The appeal in this case is a *pro se* administrative appeal filed with the Board, not a *pro se* appeal filed in one of the state appellate courts.[5] However, the rationale of the U.S. Supreme Court in *Houston*, rooted in constitutional concepts of due process and fundamental fairness, has equal force here. Thus, we extend the "prisoner mailbox rule" to *pro se* administrative appeals filed with the Board.[6] Applying the rule in this case, the September 1, 2000 postmark on Pettibone's *pro se* administrative appeal is clearly within thirty days of the August 3, 2000 mailing date. Therefore, Pettibone's administrative appeal was filed in a timely manner.

■ Pettibone next argues that the Board's finding that Pettibone failed to notify his New York parole agent about his arrest within seventy-two hours, in violation of Condition No. 3(b), is not supported by substantial evidence.[7] We agree.

---

4. The U.S. Supreme Court has stated that fundamental fairness is the touchstone of due process. *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).

5. In *Christjohn v. Pennsylvania Board of Probation and Parole*, 755 A.2d 92 (Pa.Cmwlth. 2000), this court indicated that the "prisoner mailbox rule" would apply in a case involving a *pro se* administrative appeal with the Board. However, we did not apply the rule in *Christjohn* because the administrative appeal in that case was filed with the Board by counsel.

6. The Board argues that our extending the "prisoner mailbox rule" to *pro se* administrative appeals filed with the Board violates the separation of powers doctrine. We disagree. Our statutory scope of review gives us authority to determine whether the Board's regulation governing the filing of administrative appeals violates the litigant's constitutional rights. As indicated above, the constitutional notions of due process and fundamental fairness lie at the heart of the "prisoner mailbox rule."

7. We note that the Board filed a motion to limit the issues on appeal to the issue of

In making that finding, the Board specifically stated that it relied upon the testimony of parole agent Douglas Lowery. (*See* O.R. at 28, 117.) Lowery testified that Pettibone admitted to his parole agent in New York that he did not *personally* contact the agent after his arrest on September 10, 1998 because "he was in lock up and was unable to contact anybody for that three day period." (O.R. at 32, 33, 64.) "Other people [Pettibone's parents] had done it, but he had not done it. . . ." (O.R. at 32.) Lowery further testified that the New York parole agent evidently believed that Condition No. 3(b) required personal notification, not notification by the parents.[8] (O.R. at 33–34.) The question arising from this testimony is whether Pettibone actually fulfilled Condition No. 3(b) by having his parents notify his New York parole agent within seventy-two hours about the September 10, 1998 arrest.

Condition No. 3(b) required that Pettibone "[m]aintain regular contact with the parole supervision staff by: . . . . notifying the parole supervision staff within 72 hours of . . . . [his] arrest. . . ." (O.R. at 4.) It seems to us that the purpose of Condition No. 3(b) is to ensure that a parole agent finds out about a parolee's arrest within seventy-two hours. The condition places the burden of notification upon the parolee, but it does not require a specific method of notification. In *Mangone v. Pennsylvania Board of Probation and Parole,* 123 Pa.Cmwlth. 34, 553 A.2d 91 (1988), *appeal denied,* 522 Pa. 591, 561 A.2d 743 (1989), a parolee was charged with a violation of Condition No. 3(b). The parole agent testified that "he [the agent] never received messages from Mangone *or his wife* within the required time period. . . ." *Id.* at 93 (emphasis added). This court determined that such testimony constitutes substantial evidence to support a violation of Condition No. 3(b). It is important here that the parole agent in *Mangone* interpreted Condition No. 3(b) to allow parolees to report an arrest through other persons, and this court did not question that interpretation.

■ In *Woodling v. Pennsylvania Board of Probation and Parole,* 113 Pa. Cmwlth. 310, 537 A.2d 89, 90 (1988), this court stated that a condition of parole "cannot be so vague that men [or women] of common intelligence must guess at its meaning." Moreover, where an order of the Board is vague, ambiguous or capable of various interpretations, this court will construe the order against the Board. *Pitt v. Pennsylvania Board of Probation and Parole,* 97 Pa.Cmwlth. 116, 508 A.2d 1314 (1986).

Here, we have an order of the Board releasing Pettibone on parole under specified conditions. With respect to Condition No. 3(b), a parolee must "notify" parole supervision staff about an arrest within seventy-two hours. We cannot say what sort of notification is required; we can only guess because the Board's order is silent in that regard. The New York parole agent and the Board here believe that the parole condition requires a *personal* notification. However, such a requirement certainly is not clear from the plain language of the Board's order. Because Condition No. 3(b) does not specifically require a parolee's *personal* notification of an arrest, a person of common intelligence, like the parole agent in *Mangone,* might reasonably conclude that a parolee may notify a parole agent of an arrest via *any* available means, including other persons.[9]

---

timeliness. However, by order dated January 8, 2001, this court denied the motion.

**8.** Pettibone corroborated Lowery's testimony. (*See* O.R. at 30–31.)

**9.** It is irrelevant that, in reporting an arrest through other persons, there is not an imme-

Based on the foregoing, we find Condition No. 3(b) to be vague, ambiguous and capable of various interpretations with respect to the required method of notification. As such, we construe the Board's order against the Board and hold that Pettibone fulfilled the requirements of Condition No. 3(b) by having his parents notify the New York parole agent about his arrest. This means, of course, that the record does not contain substantial evidence to support the Board's finding that Pettibone violated Condition No. 3(b).

Accordingly, we reverse.

### ORDER

AND NOW, this 16th day of August, 2001, the order of the Pennsylvania Board of Probation and Parole, dated October 4, 2000, is hereby reversed.

diate person-to-person contact between the parolee and the parole agent. Once informed of the arrest, the parole agent knows the whereabouts of the parolee and can initiate personal contact.