Roland KITTRELL, Appellant

v.

Timothy WATSON, Rodney Kauffman,
Mr. Grassmyer, Mr. Ordorf and
Mr. Evans.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 17, 2014.
Decided April 2, 2014.

---

Roland Kittrell, pro se.

Joseph Fulginiti, Assistant Counsel, for appellees.

BEFORE: McGINLEY, Judge, and SIMPSON, Judge, and JAMES GARDNER COLINS, Senior Judge.

OPINION BY Judge SIMPSON.

Roland Kittrell (Kittrell), an inmate representing himself, appeals from the order of the Court of Common Pleas of Centre County (trial court) that dismissed his complaint pursuant to Section 6602(e) of the Prison Litigation Reform Act (PLRA),[1] for failure to exhaust administrative remedies. The trial court did not address the other preliminary objections the Department of Corrections (DOC) filed on behalf of its individual employees[2] (Respondents). On appeal, Kittrell argues he exhausted his administrative remedies based on the prisoner mailbox rule. Alternatively, he asserts Respondents precluded him from exhausting his remedies. Upon review, we vacate the trial court's order and remand so it may consider evidence pertaining to the prisoner mailbox rule and, if necessary, decide the remaining preliminary objections.

---

1. 42 Pa.C.S. § 6602(e).

2. Respondents, who hold or held positions at State Correctional Institution (SCI)–Rock-

## I. Background

Kittrell filed a civil rights complaint under 42 U.S.C. § 1983, seeking compensatory and punitive damages. According to his complaint, on December 31, 2009, Respondents intentionally and maliciously assaulted him, while he was handcuffed, resulting in significant injuries. Kittrell asserts he was a target for the assault based on his complaints of sexual harassment and sexual assault. Kittrell also accuses Respondents of verbal abuse, excessive force and deliberate indifference, and a failure to protect him from a known harm in violation of the Eighth Amendment of the United States Constitution. He further alleges that, following the attack, he was unlawfully confined in a torture cell without adequate food or medical treatment, also violating his constitutional rights.

DOC counters that Kittrell instigated the attack on an officer. Respondents reacted, attempting to subdue him and to restore order to the prison. DOC asserts Kittrell is precluded from seeking judicial relief because he did not follow the administrative process outlined in DOC's policy, DC–ADM 804 (Policy).

### A. Administrative Process

Pursuant to DOC's Inmate Grievance Review System, 37 Pa.Code § 93.9 (incorporating DC–ADM 804), inmates may seek resolution of problems or issues of concern arising during the course of their confinement (Grievance Process). The Grievance Process consists of three steps. In Step 1, an inmate must submit the initial grievance to the Grievance Coordinator within 15 working days of the initial incident. The Grievance Coordinator then has 15

---

view, located in Centre County, are Timothy Watson, Rodney Kauffman, Mr. Grassmyer, Mr. Ordorf and Mr. Evans.

working days to provide a written response.

In Step 2, an inmate must appeal the grievance response to the Facility Manager or Superintendent within 15 working days of receiving it. In turn, the Manager or Superintendent must notify the inmate of his decision within 15 working days of receiving the appeal.

If still dissatisfied, an inmate in Step 3 must submit the final appeal to the Secretary's Office of Inmate Grievances and Appeals (Central Office) within 15 working days of receiving an appeal response. The Central Office then has 30 working days to respond to the inmate. The Grievance Process thus culminates in the Central Office's response.

Significant to this appeal, DOC's Policy provides an exception to the timing requirements for filing inmate appeals under this process. In regards to Step 2, in the section entitled "Staff Responsibilities," it states:

> [a]n exception to the 15 day filing requirement will be made only when the inmate notifies the Facility Manager/designee [Superintendent] of the reason for the delay and it is determined that the delay in filing was caused by:
>
> (1) a temporary transfer from the facility where the grievance should have been filed;
>
> (2) a permanent transfer to another facility from where the grievance should have been filed;
>
> (3) Authorized Temporary Absence (ATA) for an extended period; or
>
> (4) *another delay with mail delivery.*

*See* DC–ADM 804(A)(2)(c) (emphasis added).

## B. Procedural History

Kittrell sought administrative relief through the Grievance Process. Pursuant to Step 1, he submitted a grievance on January 16, 2010. After receiving a request for clarification of that grievance, Kittrell submitted an amended grievance on January 28, 2010.

A month later, DOC acknowledged receiving his grievance, but did not respond to it. This acknowledgment stated, "[t]he investigation of your grievance is continuing. Due to the need for additional information, I cannot provide a response within the original time frame." Certified Record (C.R.), Item No. 36, Attachment A (Grievance Packet No. 305015) (signed by Jeffrey Rackovan).

Kittrell, now apparently housed at SCI–Huntingdon, did not receive a grievance response (Step 1) until June 11, 2010. In its entirety, this grievance response stated, "These allegations have been investigated. Appropriate administrative measures have been taken." *Id.*

Kittrell dated his appeal of the grievance response as June 28, 2010 (Step 2 appeal). Significantly, Kittrell consistently maintains he deposited his Step 2 appeal in the SCI–Huntingdon restricted unit's confidential mailbox on the same date. Had his Step 2 appeal been sent on the same date, it would have been timely. However, the posted date on the envelope reflects a date of July 26, 2010, almost a month later.[3] According to the time-stamp, the SCI–Rockview Superintendent's office received Kittrell's Step 2 appeal the following day.

---

**3.** Kittrell claimed the delay in mail delivery is attributable to the fact that the mail of SCI–Huntington is processed and sorted at another facility, SCI–Smithfield. *See* Transcript of Proceedings, 5/17/13, at 19–20, 28. DOC did not deny this claim, noting only that "Smithfield is about 200 yards away from Huntington." *Id.* at 37.

When he received no response to his Step 2 appeal, on August 10, 2010, Kittrell submitted an inmate request to a staff member, directed to Superintendent Tennis of SCI–Rockview. In the description, Kittrell explained he sent an appeal dissatisfied with the response in Step 2 on June 28, 2010. He also represented he "sent DC–804 Part 2 of Grievance # ROC–305015–10, constructive notification again. I'm sending this letter of request to let you know that your time of response to all I've mentioned above is past time of required working day(s)." C.R., Item No. 43, Ex. E. In the segment reserved for a staff response, a DOC staff member stated "You will receive an appeal response." *Id.* The response portion was signed and dated August 19, 2010. It provided no explanation for the delay.

On August 27, 2010, the Superintendent of SCI–Rockview, Mariosa Lamas, responded to Kittrell's appeal, denying it as untimely because "[t]he envelope in which you sent this appeal is dated July 26, 2010." *See* C.R., Item No. 77, Ex. G. Kittrell appealed this response to the final level of review. The Central Office affirmed the Superintendent's decision and found the appeal untimely.

## C. Preliminary Objections

DOC filed preliminary objections to Kittrell's complaint in the form of a demurrer to each of the substantive claims, and for failure to exhaust administrative remedies. DOC also asserted the defense of sovereign immunity to any intentional tort claims.

The trial court held argument on the preliminary objections. During argument, the trial court heard Kittrell on the issue of timeliness. Specifically, Kittrell drew

the trial court's attention to his earlier submission of a "cash slip," form DC–138A, related to his Step 2 appeal. *See* C.R., Item No. 43 (Plaintiff's Response to the Defendants' Brief in Opposition to Plaintiff's Motion to Open Defendants' Motion to Strike Plaintiff's Amended Complaint), Ex. D. Regarding the circumstances beyond his control, Kittrell asserted the mail room employees at SCI–Smithfield, which processes the mail for the facility, held his appeal for a month. Tr. Ct., Slip Op., 7/2/13, at 7 (citing Transcript, 5/17/13, at 20).

The trial court subsequently ruled in DOC's favor. In its decision, the trial court reasoned Kittrell did not timely file his appeals through the Grievance Process. Specifically, the trial court found Kittrell's Step 2 appeal was untimely. The trial court also found Kittrell knew or should have known of the delay in mail delivery. Thus, under DOC's Policy, Kittrell should have notified the Superintendent of the reason for the delay. Because he did not follow the Policy, the trial court concluded Kittrell did not properly exhaust his administrative remedies.

Ultimately, the trial court dismissed Kittrell's complaint for failure to exhaust administrative remedies. In its order, the trial court stated it considered the exhibits Kittrell submitted to it, including the cash slip. The trial court did not address DOC's other objections.

Kittrell appealed the trial court's order, seeking reversal and a remand.[4] He argues he satisfied his duty to exhaust administrative remedies when he pursued a formal complaint through each step of DOC's Grievance Process. Further, Kitt-

---

4. Kittrell filed his notice of appeal with the Pennsylvania Superior Court, which transferred the matter to this Court.

rell contends his appeals were timely under the prisoner mailbox rule.

DOC counters that dismissal of Kittrell's complaint was appropriate. In addition, DOC re-asserts the remaining substantive preliminary objections. They include sovereign immunity, and failures to state a claim under the Eighth Amendment for deliberate indifference, excessive force, failure to protect, or for any other constitutional violation based on the alleged verbal and physical assaults.

## II. Discussion

■ Where a trial court dismisses a complaint based on preliminary objections, this Court's review is limited to determining whether the trial court committed an error of law or an abuse of discretion. *Podolak v. Tobyhanna Twp. Bd. of Supervisors*, 37 A.3d 1283 (Pa.Cmwlth.2012); *Joloza v. Dep't of Transp.*, 958 A.2d 1152 (Pa.Cmwlth.2008). When considering preliminary objections this Court must consider as true all well-pled material facts set forth in the complaint and all reasonable inferences that may be drawn from those facts. *Werner v. Zazyczny*, 545 Pa. 570, 681 A.2d 1331 (1996); *Petsinger v. Dep't of Labor & Indus., Office of Vocational Rehab.*, 988 A.2d 748 (Pa.Cmwlth.2010).

■ Preliminary objections should be sustained only in cases where it is clear and free from doubt that the facts pled are legally insufficient to establish a right to relief. *Werner*. As such review raises a question of law, our scope of review is plenary. *Podolak*.

Below, the trial court only ruled on DOC's preliminary objection as to exhaustion of administrative remedies. In so doing, the trial court considered the interplay of the prisoner mailbox rule and DOC's Policy to conclude that a delay in mail delivery nullifies Kittrell's attempts to comport with the Grievance Process. We examine the propriety of dismissing Kittrell's complaint under these circumstances.

### A. Exhaustion of Administrative Remedies

Exhaustion of administrative remedies is a defense to actions that may be addressed through administrative means. Pursuant to Section 6603(a) of the PLRA, the courts are subject to both federal and state exhaustion requirements with regard to civil rights claims implicating prison conditions. 42 Pa.C.S. § 6603(a). Federal law precludes assertion of such Section 1983 claims, "of this title … by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

The "administrative remedies available at the state prison level" are set forth in DOC's Policy. *See* 37 Pa.Code § 93.9. The Policy requires an inmate who has received an initial determination on his grievance to appeal to the Superintendent and, thereafter, seek final review with DOC. If the inmate fails to complete each of these steps, he fails to exhaust his administrative remedies. *See Humphrey v. Dep't of Corr.*, 939 A.2d 987 (Pa.Cmwlth. 2007) (where inmate did not allege timeliness of appeal, he failed to exhaust administrative remedies).

■ Under the PLRA, when federal claims are asserted, exhaustion is mandatory. *See* 42 U.S.C. § 1997e. Exhaustion must also be "proper." *Woodford v. Ngo*, 548 U.S. 81, 92, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90–91, 126 S.Ct. 2378;

*Paluch v. Palakovich*, 84 A.3d 1109 (Pa. Cmwlth.2014) (quoting *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir.2007)). Hence, an inmate must "us [e] all steps that the agency holds out." *Woodford*, 548 U.S. at 90, 126 S.Ct. 2378.

Here, there is no dispute that Kittrell filed an appeal under all three steps of the Grievance Process before filing his complaint. *Cf. Watson v. Dep't of Corr.*, 990 A.2d 164 (Pa.Cmwlth.2010) (dismissal for failure to exhaust administrative remedies upheld where complaint exhibits showed plaintiff filed his complaint before expiration of the grievance review period). Nonetheless, the trial court found that Kittrell did not comport with each step thereunder.

The trial court acknowledged the dispute as to whether Kittrell timely filed his appeal in Step 2. Tr. Ct., Slip Op. at 7. There is no dispute that this appeal is dated June 28, 2010. There is also no dispute that it was post-marked on July 26, 2010, and received the following day. This is 30 working days after the initial grievance response, whereas the Grievance Process provides for only 15 working days. From this delay in mail delivery, the trial court concluded Kittrell did not comply with DOC's Policy.

By contrast, Kittrell contends he placed the appeal in the institutional mailbox on the same date as he dated the appeal, June 28, 2010. If the prisoner mailbox rule applies, the trial court should have used this date. *Pettibone v. Pa. Bd. of Prob. & Parole*, 782 A.2d 605 (Pa.Cmwlth.2001). Using June 28, 2010 as the date of filing, Kittrell's Step 2 appeal would be timely.

In assessing the timeliness of Kittrell's Step 2 appeal, the trial court considered and rejected the application of the prisoner mailbox rule. The trial court determined DOC's Policy governed instead. It explained:

> While [Kittrell] is correct in assuming it would be improper to hold him responsible for the delays of the mailing process, the [Policy] explicitly states that the inmate has an affirmative duty to notify the Facility Manager or designee (Superintendent) of the reason for the delay, including delays in mail delivery when such delays occurs [sic]. Plaintiff knew, or should have known the Superintendent had 15 days to respond to the appeal. . . .

Tr. Ct., Slip Op. at 8. The trial court also noted that Kittrell received notice in mid-July, in response to his inquiry regarding the lack of a response to his appeal, that no Step 2 appeal "had yet been processed." *Id.*

From these surrounding events, regardless of the prisoner mailbox rule, the trial court held Kittrell had an affirmative duty under the Policy to notify the Superintendent of any delay in mail delivery of his Step 2 appeal. It is on this basis that the trial court dismissed Kittrell's civil rights complaint.

### B. Prisoner Mailbox Rule

 Under the prisoner mailbox rule, a prisoner's *pro se* appeal is deemed filed at the time it is given to prison officials or put in the prison mailbox. *See Com. v. Jones*, 549 Pa. 58, 700 A.2d 423 (1997); *Sweesy v. Pa. Bd. of Prob. & Parole*, 955 A.2d 501 (Pa.Cmwlth.2008). "At the heart of the 'prisoner mailbox rule' are the constitutional notions of due process and fundamental fairness." *Pettibone*, 782 A.2d at 608; *Com. v. Cooper*, 710 A.2d 76, 78 (Pa.Super.1998).

Here, the trial court questioned applicability of the prisoner mailbox rule; instead, the court applied DOC's Policy to impose an affirmative duty upon Kittrell to notify the Superintendent of any delay in mail

delivery. Important to the trial court's skepticism of the prisoner mailbox rule was its erroneous belief that, "in context[,] the 'mailbox rule' is limited to post-conviction appeals, not administrative appeals within the grievance procedure." Tr. Ct., Slip Op. at 8 n. 1. We are constrained to disagree.

The trial court's doubt as to applicability of the rule is inconsistent with decisions by our appellate courts, including our Supreme Court. Indeed, our Supreme Court expressly "extend[ed] the prisoner mailbox rule to all appeals by *pro se* prisoners." *Jones*, 549 Pa. at 64, 700 A.2d at 426; *see also Christjohn v. Pa. Bd. of Prob. & Parole*, 755 A.2d 92 (Pa.Cmwlth.2000) (noting prisoner mailbox rule applies to all inmate appeals, provided the inmate is not represented by counsel).

Recognizing the limitations of incarceration apply equally to all *pro se* inmates, Pennsylvania courts apply the prisoner mailbox rule in a number of legal contexts. "An incarcerated *pro se* litigant in a civil action is faced with the same difficulties in tracking his filings as an incarcerated defendant pursuing relief, *pro se,* from a criminal conviction." *Thomas v. Elash,* 781 A.2d 170, 176 (Pa.Super.2001) (extending the prisoner mailbox rule to all *pro se* legal filings by incarcerated litigants, including civil matters); *Cooper* (applying the prisoner mailbox rule to the spectrum of private criminal complaints).

Kittrell is unrepresented by counsel. Throughout the litigation, he consistently claimed he deposited the Step 2 appeal in the prison mail on the same date he completed it, June 28, 2010. Therefore, the trial court should have considered the prisoner mailbox rule here. *Jones.*

 Under the prisoner mailbox rule, a legal document is deemed "filed" on the date it is delivered to the proper prison authority or deposited in the prison mail-box. *Com. v. Castro,* 766 A.2d 1283, 1287 (Pa.Super.2001) ("filing" focuses "upon the act of the litigant in placing the document in the hands of the appropriate" office or officer rather than actual receipt of the document). A cash slip constitutes sufficient evidence to show compliance with the prisoner mailbox rule. *Jones.* An affidavit as to the date of mailing may also be considered. *Id.* In order to benefit from the rule, Kittrell bears the burden of proving that he timely deposited his Step 2 appeal in the prison mailbox.

Kittrell submitted a signed cash slip, and an attestation as to its accuracy. Of note, DOC did not challenge the veracity of the signed cash slip. In addition, Kittrell submitted his request to staff member inquiring about the whereabouts of a response to his appeal in August 2010. Kittrell also submitted an affidavit as to the date of mailing. Thus, Kittrell submitted evidence which, if accepted as credible, could trigger application of the "prisoner mailbox rule."

The trial court should have evaluated this evidence before discounting application of the rule here. The trial court thus erred in dismissing Kittrell's complaint. Accordingly, this matter is remanded so the trial court may consider this evidence when determining the timeliness of Kittrell's Step 2 appeal. *See Coldren v. Pa. Bd. of Prob. & Parole,* 795 A.2d 457 (Pa. Cmwlth.2002).

In light of the possible applicability of the prisoner mailbox rule, we next analyze whether the Policy imposes a duty upon Kittrell, for which noncompliance warrants dismissal of his claims.

### C. Policy

Essentially, the trial court dismissed Kittrell's complaint for failing to properly exhaust his administrative remedies be-

cause he did not comply with DOC's Policy. In pertinent part, that Policy sets forth the exceptions to the 15–day filing requirement for inmate grievance appeals.

On its face, the Policy only applies when an inmate needs an exception from the 15–day filing requirement. When the prisoner mailbox rule is applied, the filing date is calculated from the date the appeal is placed in the prison mail.

Before considering the Policy, the trial court should have determined the date of filing under the prisoner mailbox rule. In this case, presuming the date of filing is calculated from the date on Kittrell's Step 2 appeal, Kittrell would require no "exception." Therefore, if such are the facts, the Policy would not be triggered to preclude the timeliness of Kittrell's Step 2 appeal.

If, however, the trial court finds that Kittrell's evidence is not credible, and that the date he placed his Step 2 appeal in the prison mail was beyond the 15 day limit in the Policy, the trial court may consider the "exceptions" to that time limit set forth in the Policy. The trial court may therefore consider whether temporary or permanent relocations of Kittrell or other delays in mail delivery were known to him, and whether Kittrell complied with the Policy in terms of notifying the appropriate Superintendent of the situation.

### D. Dismissal of Complaint

Finally, we question whether, in light of the seriousness of the claims alleged, the trial court should have dismissed this complaint for failure to exhaust administrative remedies. This is particularly true when

it is unclear on this record that his claims are capable of resolution through administrative means. *Parran v. Rozum*, (Pa. Cmwlth., No. 239 C.D.2012, filed Jan. 4, 2013), 2013 WL 3942101 (unreported) (concluding trial court erred in dismissing action for failure to exhaust administrative remedies when inmate alleged abuse by prison employees, particularly on a limited record).[5]

### III. Conclusion

In sum, the trial court erred in failing to fully consider application of the prisoner mailbox rule, and in holding Kittrell failed to exhaust his administrative remedies based on non-compliance with the Policy.

For the foregoing reasons, we vacate the trial court's order and remand to the trial court. The court shall resolve factual issues relevant to the prisoner mailbox rule, and, if necessary, address DOC's remaining preliminary objections.[6] We leave to the discretion of the respected trial court whether or not to re-open the record.

### *ORDER*

**AND NOW,** this 2nd day of April, 2014, the July 2, 2013 order of the Court of Common Pleas of Centre County is hereby **VACATED,** and the matter is **REMANDED** to the trial court for further proceedings in accordance with the foregoing opinion.

Jurisdiction is relinquished.

---

5. Unreported panel decisions issued after January 15, 2008 may be cited for their persuasive value, but not as binding precedent. 210 Pa.Code § 69.414.

6. Moreover, it appears that Kittrell may be able to allege sufficient facts to establish his

constitutional claims. Where a pleading can be cured by amendment, a court "must give the pleader an opportunity to file an amended complaint.... This is not a matter of discretion with the court[,] but rather a positive duty." *Jones v. City of Phila.*, 893 A.2d 837, 846 (Pa.Cmwlth.2006).