## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dennis Crook and Siti Crook, h/w,      :
                 Appellants      :
                            :
        v.                     :
                          :    No. 805 C.D. 2022
East Fallowfield Township      :    Submitted: March 31, 2023


BEFORE:    HONORABLE CHRISTINE FIZZANO CANNON, Judge
                 HONORABLE ELLEN CEISLER, Judge
                 HONORABLE LORI A. DUMAS, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON          FILED: September 14, 2023


Dennis Crook (Mr. Crook) and his wife, Siti Crook (Mrs. Crook) (collectively, the Crooks), appeal the March 1, 2022 order of the Chester County Court of Common Pleas (Chester County trial court) granting the preliminary objections of East Fallowfield Township (the Township) and striking the Crooks' complaint. Upon review, we affirm.


## I. Background

On February 4, 2019, Mr. Crook allegedly sustained various injuries when he slipped and fell on property owned by the Township which is located in Chester County.[1] Reproduced Record (R.R.) at 1a & 3a-10a. On January 25, 2021,

---

[1] Mrs. Crook alleged that the Township's negligence deprived her of the "society, companionship, services and assistance" of her spouse. Reproduced Record (R.R.) at 10a-11a.

roughly one week before the applicable limitations period was set to expire, the Crooks filed a negligence claim[2] with the Bucks County Court of Common Pleas (Bucks County court).[3] On or around January 27, 2021, the Crooks mistakenly sent the complaint to the Chester County Sheriff for service, rather than first mailing it to the Bucks County Sheriff with a request for deputized service by the Chester County Sheriff.[4] *Id.* at 105a & 115a; *see also* Trial Ct. Op., 5/20/22 at 1.[5] The Crooks allege that the Chester County Sheriff received the complaint on February 5, 2021. R.R. at 105a; *see also* Trial Ct. Op., 5/20/22 at 2. The Crooks further assert that the Chester County Sheriff returned the complaint to the Crooks' counsel on February 17, 2021.[6]

---

[2] The parties agreed to transfer this matter from Bucks County to Chester County for the resolution of the Township's preliminary objections. *See* R.R. at 70a-71a.

[3] "An action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another" must be commenced within two years. Section 5524(2) of the Judicial Code, 42 Pa.C.S. § 5524(2).

[4] Rule 400(a) of the Pennsylvania Rules of Civil Procedure provides that with limited exceptions not applicable here, "original process shall be served within the Commonwealth only by the sheriff." Pa.R.Civ.P. 400(a). Rule 400(d) provides that "[i]f service is to be made by the sheriff in a county other than the county in which the action was commenced, the sheriff of the county where service may be made shall be deputized for that purpose by the sheriff of the county where the action was commenced." Pa.R.Civ.P. 400(d).

[5] The Crooks allege they mailed the complaint to the Chester County Sheriff on January 27, 2021. *See* R.R. at 105a. The record contains a letter addressed to the Chester County Sheriff dated January 27, 2021 requesting service of the complaint on the Township, but no evidence of actual mailing on that date. *See* R.R. at 115a.

[6] The Crooks alleged in their response to the Township's preliminary objections that the date on which the Chester County Sheriff returned the complaint to them was "approximately" February 12, 2021. R.R. at 105a. However, the Crooks subsequently modified this approximation to an "estimated" date of February 17, 2021 in their motion for reconsideration of the trial court's March 1, 2022 order. *Id.* at 133a; *see also* Crooks' Br. at 7.

Pennsylvania Rule of Civil Procedure 405 provides, in pertinent part:

On April 29, 2021, the Crooks praeciped the Bucks County court for reinstatement of the complaint. R.R. at 1a. The Crooks then sent the reinstated complaint to the Bucks County Sheriff with a request to forward the complaint to the Chester County Sheriff for deputized service. *See id.* at 1a & 25a. On May 3, 2021, the Bucks County Sheriff received the mailing and forwarded it to the Chester County Sheriff sometime thereafter. *Id.* The Chester County Sheriff did not receive the complaint until June 2, 2021. *Id.* On June 7, 2021, the Chester County Sheriff returned the complaint to the Bucks County Sheriff, as the 30-day window for service had already expired.[7] *Id.* On June 8, 2021, the Bucks County Sheriff

> (a) When service of original process has been made the sheriff or other person making service shall make a return of service forthwith. If service has not been made and the writ has not been reissued or the complaint reinstated, a return of no service shall be made upon the expiration of the period allowed for service.
>
> . . . .
>
> (e) The return of service or of no service shall be filed with the prothonotary.
>
> . . . .
>
> (g) The sheriff upon filing a return of service or of no service shall notify by ordinary mail the party requesting service to be made that service has or has not been made upon a named party.

Pa.R.Civ.P. 405(a), (e), (g).

[7] Pennsylvania Rule of Civil Procedure 401 provides, in relevant part:

> (a) Original process shall be served within the Commonwealth within 30 days after the issuance of the writ or the filing of the complaint.
>
> (b)(1) If service within the Commonwealth is not made within the time prescribed by subdivision (a) of this rule or outside the Commonwealth within the time prescribed by Rule 404, the

3

returned the complaint to the Bucks County Prothonotary who, in turn, forwarded the complaint to the Crooks sometime thereafter. *See* R.R. at 1a. On June 24, 2021, the Crooks once again praeciped to reinstate the complaint in the Bucks County court. R.R. at 1a & 26a-27a. The Chester County Sheriff was deputized on July 2, 2021 and effectuated service on the Township on July 16, 2021. R.R. at 1a-2a & 37a.

The following month, the Township filed preliminary objections with the Bucks County court. R.R. at 2a, 38a-65a. The Township asserted that the selected venue was improper and, accordingly, requested transfer of the matter to the Chester County trial court.[8] *Id.* at 60a & 65a (citing Pa.R.Civ.P. 1028(a)(1)). The Township also objected on the basis of improper service. *Id.* at 61a-64a (citing Pa.R.Civ.P. 1028(a)(1)).[9] The parties entered into a stipulation to transfer the matter

> prothonotary upon *praecipe* and upon presentation of the original process, or a copy thereof, shall continue its validity by designating the writ as reissued or the complaint as reinstated.
>
> (2) A writ may be reissued or a complaint reinstated at any time and any number of times. A new party defendant may be named in a reissued writ or a reinstated complaint only if the writ or complaint has not been served on any defendant.
>
> . . . .
>
> (4) A reissued, reinstated, or substituted writ or complaint shall be served within the applicable time prescribed by subdivision (a) of this rule or by Rule 404 after reissuance, reinstatement, or substitution.

Pa.R.Civ.P. 401(a), (b)(1), (2), (4).

[8] The Township stated that it would file its remaining preliminary objections with the Chester County trial court following a transfer. *See* R.R. at 64a.

[9] The Township additionally asserted that the doctrine of governmental immunity barred the Crooks' claim. *See* R.R. at 62a-64a (citing Pa.R.Civ.P. 1028(a)(4)). We observe that the

4

to the Chester County trial court, and the Bucks County court entered an order acknowledging the parties' stipulation and dismissing the Township's preliminary objections as moot. *Id.* at 67a-71a. In January 2022, the Township filed preliminary objections with the Chester County trial court. *Id.* at 75a-95a. The Township again objected on the basis of improper service, contending that the court should dismiss the complaint with prejudice as the Crooks were not diligent in their attempts to render service. *Id.* at 75a-95a (citing *Gussom v. Teagle*, 247 A.3d 1046 (Pa. 2021); *Farinacci v. Beaver Cnty. Indus. Dev. Auth.*, 511 A.2d 757 (Pa. 1986)).[10] The Crooks filed a response, maintaining that their attempts at service were sufficiently diligent. *Id.* at 104a-06a.

By order dated March 1, 2022, the Chester County trial court sustained the Township's preliminary objections and struck the Crooks' complaint on the basis that the Crooks failed to offer proof that they diligently attempted to timely effectuate service. R.R. at 123a (citing *Gussom*, 247 A.3d at 1048). The Crooks filed a motion for reconsideration, which the court denied. *Id.* at 130a-31a & 191a-92a. The court noted that despite alleging in their response to the Township's preliminary objections that the Chester County Sheriff returned the complaint to them on February 12, 2021, the Crooks asserted in their motion for reconsideration that this date was more likely February 17, 2021, even while conceding that this date is "simply unknown." *Id.* at 191a (quoting Mem. of Law in Supp. of Mot. for Recons. at 9).

---

Township failed to raise the affirmative defense of governmental immunity as new matter. *See* Pa.R.Civ.P. 1030(a) (providing that the affirmative defense of "immunity from suit . . . shall be pleaded in a responsive pleading under the heading "New Matter").

[10] The Township also reasserted that it was shielded from liability pursuant to the affirmative defense of governmental immunity. *See* R.R. at 79a.

In May 2022, the Chester County trial court issued an opinion expounding upon its March 2022 order pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), explaining:

> [The Crooks] attempt to provide explanations for the delay without providing an actual reason as to why the date of return [following the failed attempt at service] is unknown to [their] counsel. Therefore, [the Crooks] could not provide an excuse as to why the reinstatement was late. While [the Crooks] provided a timeline for the remainder of time it took for [the Township] to receive service, the [trial c]ourt denied [the Crooks'] [m]otion for [r]econsideration as [the Crooks] failed to provide [the Township] with actual notice of the [c]omplaint until almost six (6) months later.

Chester Cnty. Comm. Pl. Ct. Op., 5/20/22 at 2. Thus, the court concluded that absent a request for an extension or an agreement of the parties for an extension, the Crooks' failure to effectuate service within 30 days of filing the complaint rendered the complaint "dead." *Id.* at 2-3 (quoting *Twp. of Lycoming v. Shannon*, 780 A.2d 835, 839 (Pa. Cmwlth. 2001)). The court also concluded that the Crooks "failed to prove they made a good-faith attempt at service after their initial attempt on January 27, 2021 before the [c]omplaint expired," explaining that the Crooks "merely speculate[d] as to why there was an initial delay in reinstatement and service[.]" *Id.* at 3 (citing *Gussom* (first citing *McCreesh v. City of Phila.*, 888 A.2d 664 (Pa. 2005)); and then citing *Lamp v. Heyman*, 366 A.2d 882 (Pa. 1976)).[11]

---

[11] Our Supreme Court has explained:

> In the seminal case of *Lamp v. Heyman*, . . . 366 A.2d 882 ([Pa.] 1976), this Court sought to end abuses of process by plaintiffs who tolled the statute of limitations by filing a writ of summons, had the writ repeatedly reissued, and deliberately failed to notify the defendant of the pending litigation. This process, while technically

6

The Crooks appealed to this Court.

## II. Issues

Before this Court,[12] the Crooks argue that the Chester County trial court erred in striking their complaint, because they attempted in good faith to effectuate service upon the Township. *See* Crooks' Br. at 18. The Crooks admit that proffering February 17, 2021 as the date on which their counsel learned of the failed attempt at service was "no more than a blind guess, an estimate . . . for which there is no evidence." *Id.* at 7. The Crooks explain that

> [i]n [] counsel's office, returns of service and their envelopes are not scanned for record keeping. They are, instead, sent back out immediately. There is no evidence to suggest this was not done in this case, other than the fact that [the Crooks] did not reinstate the [c]omplaint received by the Chester County [S]heriff [on] February 5, 2021

compliant with the Rules of Civil Procedure, nonetheless defeated the purpose of the statute of limitations, which is to protect defendants from stale claims.

*McCreesh v. City of Phila.*, 888 A.2d 665 (Pa. 2005). The Court explained in a separate matter that

> *Lamp* requires plaintiffs to act diligently to meet their good-faith requirement to effectuate service of process upon defendants so as not to dilute the policies underlying the statute of limitations. [*Lamp*, 366 A.2d at 889] ("Our purpose is to avoid the situation in which a plaintiff can bring an action, but, by not making a good-faith effort to notify a defendant, retain exclusive control over it for a period in excess of that permitted by the statute of limitations.").

*Gussom v. Teagle*, 247 A.3d 1056 (Pa. 2021).

[12] "Where a trial court dismisses a complaint based on preliminary objections, this Court's review is limited to determining whether the trial court committed an error of law or an abuse of discretion." *Kittrell v. Watson*, 88 A.3d 1091, 1095 (Pa. Cmwlth. 2014).

until April 29, 2021, 83 days later. No one knows how much of that 83[-]day period is attributable to [the Crooks'] counsel's office, rather than a delay of the sheriff or a delay in the mail.[13] Nevertheless, it is the sole basis of the lower court striking [their] [c]omplaint.

*Id.* at 19. The Crooks maintain that "[t]he date the return was posted by the Sheriff's office is simply unknown and [the Crooks'] counsel office disposed of the envelope when opening the mail, so it is unknown when the return was received in the office." *Id.* at 7-8. Nevertheless, the Crooks insist "that the very fact that [the length of the delay] is no more than a guess should have militated [against] dismissal of the

---

[13] The Crooks posit that mail delivery delays with the United States Postal Service would have been likely during the time period at issue due to the COVID-19 pandemic. *See* Crooks' Br. at 8. In a matter involving dismissal for insufficient service of process under Federal Rule of Civil Procedure 12(b)(5), although the United States District Court for the Middle District of Pennsylvania

> acknowledge[d] the effects of the pandemic as they relate[d] to the analysis of [the plaintiff's] good[-]faith efforts, [the plaintiff] ha[d] not shown how the COVID-19 pandemic actually affected [her] counsel's ability to serve the writ at the proper address, obtain an authorized signature or file a return of service in compliance. *See Gold Line, Inc. v. Ourbus, Inc.*, No. 3:20-CV-02015, 2022 WL 16554992, at *6 (M.D. Pa. Oct. 31, 2022) (acknowledging that some of [the] plaintiff's attempts at service failed due to "forces out of [the p]laintiff's control, *i.e.*, [the d]efendant's remote workforce during a global pandemic," but concluding that plaintiff did not establish good faith for failure to timely serve defendant because plaintiff "offered no rationale for its inaction for more than four months following its initial attempt at service.").

*Staretz v. Walmart Stores E., L.P.*, No., 3:22-CV-00967, 2023 WL 2351885, at *4 (M.D. Pa. Mar. 3, 2023). Likewise, here, while citing pandemic-related mail delivery delays as one of two possible explanations for the more than two-month interval between the initial failed attempt at service and the subsequent praecipe for reinstatement, the Crooks fail to demonstrate how the pandemic "actually affected" their ability to effectuate service. *See id.*

[c]omplaint." *Id.* at 19. Thus, the Crooks fault the Chester County trial court for "attribut[ing] a delay—of unknown length—to [them]." *Id.*

Further, the Crooks contend that the Chester County trial court erred in striking their complaint, because their "efforts to effectuate service were reasonable and there is zero evidence that [they were] attempting to forestall the legal machinery of the case." *Id.* at 11 (citing *McCreesh*). The Crooks also assert that *Gussom* is distinguishable, as the roughly 135-day period deemed fatal to the plaintiff's complaint in that case far exceeds the estimated 76-day delay in the present matter. *Id.* at 15-16. Moreover, the Crooks reason that whereas the *Gussom* plaintiff failed to respond to the defendant's preliminary objections, "thereby failing to meet her burden[] by default," here, they filed a response to the Township's preliminary objections. *Id.* at 4 & 18. Thus, the Crooks maintain that "the [Chester County] trial court erred by striking [the complaint] on the basis of a short delay, of unknown length, attributable to [the Crooks]." *Id.* at 13.

The Township counters that the Crooks have failed to prove that they attempted in good faith to timely effectuate service. Appellee's Br. at 10 (citing *Gussom*).

### III. Discussion

We agree with the Chester County trial court that the Crooks failed to prove that they diligently attempted in good faith to timely serve process on the Township. In *Gussom*, the plaintiff filed her complaint approximately three months before the expiration of the applicable limitations period. *Gussom*, 247 A.3d at 1049. Roughly two weeks later, the plaintiff filed an affidavit of non-service with the Chester County trial court, alleging that she learned upon attempting service that

9

the defendant had moved to a different state. *Id.* Around four months later, and nearly one month after the date on which the applicable limitations period would have expired, but for the filing of the complaint, the plaintiff filed a praecipe for reinstatement. *Id.* The defendant filed preliminary objections, asserting, *inter alia*, that the plaintiff had failed to properly serve the complaint. *Id.* The plaintiff again praeciped to reinstate the complaint but did not respond to the preliminary objections. *Id.*

The Chester County trial court sustained the preliminary objections and dismissed the complaint with prejudice. *Gussom*, 247 A.3d at 1049. The plaintiff filed a motion for reconsideration, asserting that mailing the complaint to the defendant's new out-of-state address constituted a good faith attempt at service, even though it went unclaimed. *Id.* The Chester County trial court denied the motion. *Id.* The plaintiff appealed to the Superior Court, which affirmed. *Id.*

The question on appeal before the Pennsylvania Supreme Court was whether dismissing the complaint in the absence of evidence that the plaintiff intended to delay service contravened *Lamp*. *Gussom*, 247 A.3d at 1048. The Court affirmed, holding "that a trial court has the discretion to dismiss a complaint when a plaintiff fails to offer proof that she diligently attempted to serve process on a defendant in a timely manner and there is no evidence to indicate that the defendant had actual notice of the commencement of the action in the relevant time frame, regardless of whether the plaintiff acted or failed to act intentionally." *Id.* The Court highlighted the fact that following the initial failed attempt at service, the record and the docket reflected a nearly four-month period of inactivity before the plaintiff sought reinstatement. *Id.* at 1057. Thus, the Court concluded that the plaintiff failed

10

to meet her burden of proving that she diligently attempted in good faith to timely effectuate service. *See id.* at 1057.

Here, the Crooks bore the burden of proving that they diligently attempted in good faith to serve process on the Township. *See Gussom*, 247 A.3d at 1057; *see also Chruszczyk v. City of Phila.* (Pa. Cmwlth., No. 513 C.D. 2014, filed Nov. 6, 2014), slip op. at 10 (citing *Bigansky v. Thomas Jefferson Univ. Hosp.*, 658 A.2d 423 (Pa. Super. 1995)) (stating that "[a]lthough there is no mechanical approach to determine what constitutes a good-faith effort, the plaintiff bears the burden demonstrating his efforts were reasonable").[14] The Crooks allege that the Chester County Sheriff received the complaint on February 5, 2021, and that the complaint was returned to them on February 17, 2021. R.R. at 105a & 133a; Trial Ct. Op., 5/20/22 at 2; Crooks' Br. at 7. Assuming *arguendo* the accuracy of these dates, the Crooks nevertheless fail to provide any explanation, let alone evidence, excusing the more than two-month period preceding the April 29, 2021 praecipe for reinstatement. In fact, the Crooks admit that the requisite evidence does not exist, conceding that "[n]o one knows how much of that . . . period is attributable to [the Crooks'] counsel's office, rather than a delay of the sheriff or a delay in the mail." Crooks' Br. at 19.[15] The Crooks merely speculate that they may have received notice

---

[14] Unreported memorandum opinions of this Court issued on or after January 15, 2008 may be cited for their persuasive value. *See* Section 414(a) of this Court's Internal Operating Procedures 210 Pa. Code § 69.414(a).

[15] We observe that although the nearly month-long delay between the Bucks County Sheriff's receipt of the complaint and request for deputized service on May 3, 2021 and the Chester County Sheriff's receipt of the complaint on June 2, 2021 is not attributable to the Crooks, it nevertheless has no bearing on the more than two-month delay preceding their April 29, 2021 praecipe for reinstatement. We further note that although it is not ascertainable from the record precisely when in June 2021 the Bucks County Prothonotary forwarded the complaint to the Crooks prior to their June 24, 2021 praecipe for reinstatement, this ambiguity likewise does not bear upon the question *sub judice*.

11

of the failed attempt at service on February 17, 2021.[16]  *See* Crooks' Br. at 7; *see also id.* at 11 (acknowledging that "[t]he period of time between the receipt of the return of service and the [April 2021] reinstatement is unknown").  This guesswork falls far short of the requisite level of proof.  *See Gussom*, 247 A.3d at 1057 (stating that whether a plaintiff fulfills his or her legal duty to make a good-faith effort to effectuate service is a "factual question"); *Farinacci*, 511 A.2d at 759-60 (dismissing personal injury action where the "plaintiffs [] failed to provide an explanation for counsel's inadvertence which could substantiate a finding that [the] plaintiffs made a good-faith effort to effectuate service" after the plaintiffs' counsel initially misplaced a file and then after locating the papers, neglected for roughly one month to deliver the requisite instructions and payment to the sheriff for issuance of a writ of summons).[17]

Nevertheless, as stated, the Crooks maintain that "there is zero evidence that [they were] attempting to forestall the legal machinery of the case."  Crooks' Br. at 11 (citing *McCreesh*).  However, the deciding question is not whether the

---

[16] The Crooks also assert that unlike the roughly 135-day period deemed fatal to the *Gussom* plaintiff's complaint, here, the estimated delay is only 76 days.  *See* Crooks' Br. at 15-16.  However, no bright line rule governs the permissible length of delay in serving process; rather, whether a plaintiff has diligently attempted in good faith to timely effectuate service is a question reserved for the sound discretion of the trial court.  *See Gussom*, 247 A.3d at 1048.

[17] The Crooks maintain that "the trial court erred by striking [the Complaint] on the basis of a short delay, of unknown length, attributable to [the Crooks]."  *Id.* at 13.  However, even accepting the more favorable estimate of February 17, 2021 (rather than February 12, 2021, *see supra* note 5) as the date on which the Crooks learned of the failed attempt at service, their more than two-month delay until April 29, 2021 in requesting reinstatement of the complaint cannot be described as "short."  *See Farinacci*.  The Crooks further suggest that "the very fact that [the length of their delay] is no more than a guess should have militated dismissal of the [c]omplaint."  Crooks' Br. at 19.  Contrary to this assertion, the absence of evidence excusing untimely service of process does not support a presumption in the Crooks' favor, but rather points to the failure to meet their evidentiary burden.

12

Crooks intended to stall their negligence action, but whether they met their burden of proving that they diligently attempted in good faith to timely effect service on the Township. *See Gussom*, 247 A.3d at 1057; *see also id.* at 1048 (quoting *Farinacci*, 511 A.2d at 759) (holding that "[i]n each case, where noncompliance with *Lamp* is alleged, the [trial] court must determine in its sound discretion whether a good-faith effort to effectuate notice was made"); *Miller v. Klink*, 871 A.2d 331, 336 (Pa. Cmwlth. 2005) (concluding that "[a] plaintiff need not intentionally delay notifying a defendant of a lawsuit in order for a court to find a lack of good faith; rather, simple neglect or mistake can support such a finding"); *Chruszczyk*, slip op. at 10 (citing *Ferrara v. Hoover*, 636 A.2d 1151 (Pa. Super. 1994) (specifying that "an overt attempt at delay is not necessary to constitute bad faith").[18] Moreover, "[s]imple neglect and mistake to fulfill the responsibility to see that requirements for service are carried out may be sufficient to bring the rule in Lamp to bear". *Id.* at 10-11 (citing *Ferrara*, 636 A.2d at 1152). Accordingly, we agree that the Chester County

---

[18] In *Gussom*, our Supreme Court explained as follows:

> Although *McCreesh* made clear that a plaintiff could fulfill her good-faith service mandate without strictly complying with the service rules as long as her efforts resulted in actual notice of the lawsuit to the defendant, like *Farinacci*, *McCreesh* did nothing to modify a plaintiff's duty to act diligently to serve notice of the commencement of an action so as not to undermine the policies that drive the statute of limitations. Nor, for that matter, did *McCreesh* change the rule clarified in *Farinacci* that the plaintiff carries an evidentiary burden to prove that she made a good-faith effort to effectuate service of process in a timely manner. To the contrary, . . . the *McCreesh* Court alluded to this evidentiary requirement. *See* [*McCreesh*, 888 A.2d] at 672 ("We subtly altered our holding in *Lamp* in *Farinacci*, requiring plaintiffs to demonstrate 'a good-faith effort to effectuate notice of commencement of the action.'").

*Gussom*, 247 A.3d at 1056-57.

13

trial court did not abuse its discretion in dismissing the Crooks' complaint with prejudice.[19]  *See Gussom.*

## IV. Conclusion

For the foregoing reasons, we affirm.

_____
CHRISTINE FIZZANO CANNON, Judge

---

[19] Although the trial court struck the Crook's complaint, the effect of the trial court's March 1, 2022 order was in fact a dismissal with prejudice due to the expiration of the applicable limitations period on February 4, 2021.  *See Twp. of Lycoming*, 780 A.2d at 839 (holding that "[u]nless a party applies to a court for an extension of time in which to serve original process, or unless the parties agree to waive the thirty-day time restriction, a writ or complaint will be 'dead' at the expiration of 30 days"); *Gussom*, 247 A.3d at 1047-48 (stating that "[s]o long as the plaintiff files her writ or complaint before the expiration of the statute of limitations applicable to her cause of action, the original filing, as well as any subsequent reissuances or reinstatements, tolls the statute of limitations").

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dennis Crook and Siti Crook, h/w,      :
                       Appellants      :
                                   :
                v.      :
                                   :
                                   :  No. 805 C.D. 2022
East Fallowfield Township      :

## O R D E R

AND NOW, this 14th day of September, 2023, the March 1, 2022 order of the Chester County Court of Common Pleas is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge