# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Burton,                              :
                  Petitioner          :
                            :
            v.                          :  No. 705 M.D. 2019
                            :  Submitted:  August 21, 2020
Pennsylvania Department of                   :
Corrections,                                 :
                  Respondent          :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE ELLEN CEISLER, Judge


<u>OPINION NOT REPORTED</u>


MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER             FILED:  February 9, 2021

Presently before the Court is a preliminary objection in the nature of a demurrer filed by the Pennsylvania Department of Corrections (DOC). The DOC filed preliminary objections to a pro se Petition for Review filed in this Court's original jurisdiction by Michael Burton (Burton), an inmate at the State Correctional Institution at Houtzdale (SCI-Houtzdale). After review, we sustain the DOC's preliminary objection as to Burton's due process and 42 U.S.C. § 1983 (Section 1983) claims.

## I. BACKGROUND

Initially, we note that when ruling on preliminary objections, the Court must accept all well-pleaded factual allegations as true, along with any reasonable

inferences deduced therefrom. *Neely v. Dep't of Corr.*, 838 A.2d 16, 19 n.4 (Pa. Cmwlth. 2003). Preliminary objections should not be sustained unless it "appear[s] with certainty that the law will not permit recovery[,] and any doubt should be resolved by a refusal to sustain them." *Id.*

With this standard in mind, we consider the facts as alleged by Burton. On October 14, 2019, while an inmate at SCI-Houtzdale, Burton filed a grievance with the DOC claiming that a corrections officer (CO) entered his cell on October 11, 2019, and stole several items of his personal property while damaging his television in the process.[1] (Petition for Review (Pet.) ¶ 1; Exhibit (Ex.) A to Pet.)[2] In his grievance, Burton claimed that other inmates in his block had suffered similar experiences with this CO but "may be afraid to file a grievance." (Ex. A to Pet.) Burton requested that the DOC investigate the issue, including a review of the video footage of the cell block, remove the CO from his unit, and reimburse Burton for his missing and damaged property. (*Id.*)

The DOC rejected Burton's initial grievance on October 16, 2019, explaining it was rejecting Burton's grievance "due to a failure to comply with" the proper procedures set forth in DC-ADM 804 of the DOC's grievance process policies, namely including proof of ownership/possession of the items.[3] (Pet. ¶ 1; Ex. B to

---

[1] Burton alleged that missing from his cell were his "highlighters, color[ed] pencils, and pictures [he] had out of [his] Dad who recently passed." (Pet. ¶ 1; Ex. A to Pet.)

[2] The documents attached to the Petition for Review are each labeled as an "Attachment." For ease of reference, we will refer to them as Exhibits.

[3] DC-ADM 804, Section 1(A)(17) provides:

> An inmate filing a grievance related to a claim of missing property must provide documentation such as a DC-153A, Personal Property Inventory Sheet; DC-154A, Confiscated Items Receipt; or a Commissary/Outside Purchase Form for evidence or proof that the property items were once in his/her possession. Failure to do so may result in the rejection of the grievance.

**(Footnote continued on next page…)**

Pet.)  In addition, the DOC rejected the grievance on the grounds that "[g]roup grievances or grievances filed on behalf of another inmate are prohibited[]" and "[g]rievances based upon different events must be presented separately."  (*Id.*)

Burton thereafter filed his second grievance on October 18, 2019.  (Pet. ¶ 1; Ex. C to Pet.)  In his second grievance, Burton removed the claims regarding other inmates and other events but otherwise stated the same claims as the first grievance with respect to the alleged theft of and damage to his personal property. Burton claimed that the CO did not provide him with a confiscation slip for the property that was confiscated, as required by the internal policy of the DOC when conducting a security cell inspection.  (Pet. ¶ 1; Ex. K to Pet.)  While Burton did not provide the receipts for any property in his second grievance, he stated that he would "write to [the] commissary for a copy" of the receipts.  (Pet. ¶ 1.)

The DOC again rejected Burton's second grievance on October 21, 2019, on the basis that Burton had "not provide[d] the required documentation for proper review as required in DC-ADM 804."  (Ex. D. to Pet.)  On October 22, 2019, Burton submitted a receipt for the allegedly damaged television and asked that it be included with his second grievance.  (Pet. ¶ 2; Ex. E to Pet.)  Burton further indicated that he had "wr[itten the] commissary for the other receipts" and would "copy and send" them once received.  (Ex. E to Pet.)  The DOC responded to this request indicating that Burton's "grievance was rejected twice" and that Burton's only "recourse is to appeal."  (*Id.*)

---

Inmate  Grievance  System  Procedures  Manual,  DC-ADM  804,  *available  at* https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/804%20Inmate%20Grievan ces.pdf (last visited Feb. 8, 2021).

3

On October 24, 2019, Burton appealed to the superintendent. With his appeal, Burton submitted receipts and asked that the 15-day requirement to submit issues be excused because "sometimes copies [of receipts] cannot be a[c]quired and copied in time for the initial submi[ssion]." (Pet. ¶ 2; Ex. G to Pet.) The superintendent upheld the rejection of Burton's second grievance on October 28, 2019, explaining that Burton's "failure to provide the required documents led to the rejections," and that while Burton claimed he "did not have all the required receipts and 15 days is not enough time to gather such documentation," Burton "failed to provide any proof to substantiate that claim." (Ex. H to Pet.) Finally, the superintendent stated that "the submission of this appeal with all required documents attached contradicts [Burton's] claims of 15 days being insufficient time." (Ex. H to Pet.)

On October 31, 2019, Burton filed his appeal to the chief grievance officer, wherein Burton argued that "at the least, video and witnesses should have been enough to investigate the claim as it pertained to a crime committed by a[] [CO] and . . . there has been a pattern of this." (Pet. ¶ 3.) Burton further claimed that he "could have been granted . . . time to gather receipts" and asked that his issue be remanded for an adequate investigation. (Ex. I to Pet.) The chief grievance officer dismissed Burton's appeal finding Burton "failed to provide required documentation with [his] initial grievance, as well as [his] resubmitted [second] grievance." (Ex. J to Pet.)

Burton then filed his Petition for Review in this Court's original jurisdiction, claiming violations of the United States Constitution, specifically of the Due Process Clause of the Fourteenth Amendment, the Fourth Amendment's protection against

4

unreasonable searches and seizures, and the Ninth Amendment.[4] Burton further claims a violation of the DOC's policy regarding a CO's ability to search an inmate's cell and confiscate property, DC-ADM 203.F. (Pet. ¶¶ 4-5.) Burton avers that the Fourteenth Amendment's mandate that no "state deprive any person of life, liberty or property without due process of law" was violated, as he had a valid property interest and has shown that procedural due process "was [not even] afforded but abridged." (Pet. ¶ 4.) Burton further asserts that the rights retained by inmates under the constitution include those protected by the Ninth Amendment and that "[e]ven a little Fourth [A]mendment protection could be applied as [Burton] has a minimal right to 'be secure in [his] person[], house[], papers, and effects, against unreasonable searches.'" (*Id.* ¶ 5. (quoting U.S. CONST. amend. IV.) Finally, Burton avers that he has alleged a violation of "DOC policy," which "state[s] that [a CO] shall not disturb an individual[']s property whenever [the CO] wants." (*Id.*)

Burton requests that this Court afford him "adequate procedural due process so that he may obtain[] and protect his property" and that the CO "be ordered to stop violating the law, constitution, and [DOC] policy." (Pet., Wherefore Clause.)

---

[4] The Due Process Clause of the Fourteenth Amendment to the United States Constitution, in relevant part, provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1.

The Fourth Amendment to the United States Constitution, in relevant part, provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. CONST. amend. IV.

The Ninth Amendment to the United States Constitution provides that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. CONST. amend. IX.

## II. PRELIMINARY OBJECTION

In response to Burton's Petition for Review, the DOC filed a preliminary objection in the nature of a demurrer. The DOC asserts that Burton failed to state a due process claim because inmate grievance systems, such as the DOC's, are an adequate post-deprivation remedy and an inmate must exhaust the administrative grievance system in a complete and proper manner in compliance with critical procedural rules. (Preliminary Objections (PO) ¶ 11, citing *Shore v. Pa. Dep't of Corr.*, 168 A.3d 374, 378-87 (Pa. Cmwlth. 2017)). The DOC argues that Burton did not comply with the procedural rules requiring that he attach documentation proving his possession of the relevant property and that Burton's "mere dissatisfaction with the outcome of a grievance proceeding" that afforded meaningful opportunities to respond does not amount to a denial of due process. (PO ¶¶ 14-15.) The DOC also avers that to the extent Burton's Petition for Review asserts a Section 1983 claim against the DOC, his claim fails because "states and state agencies are not 'persons' for purposes of Section 1983." (*Id.* ¶ 17 (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989); *Warren v. Pa. Dep't of Corr.*, 616 A.2d 140, 141-42 (Pa. Cmwlth. 1992)).)

In its brief, the DOC further argues that Burton's Fourth Amendment, Ninth Amendment, and DOC policy claims are frivolous, as: (1) "[t]he Fourth Amendment does not apply to prison cells because inmates do not have a reasonable expectation of privacy"; (2) "[t]he Ninth Amendment does not independently provide a source of individual constitutional right[s]"; and (3) DOC policy does not create rights in inmates under the Due Process Clause. (DOC's Brief (Br.) at 14.)

In response to the DOC's preliminary objection, Burton avers that he alleged facts sufficient to establish that his procedural due process rights were violated. Burton argues that "inmate grievance systems are an[] adequate post-deprivation

6

remedy . . . only in those cases where the fact-finder conducts an actual investigation and reviews the property loss claim." (Response to PO ¶ 6.) Burton asserts that "had a fact-finder reviewed or investigated his claims [to] even a minimal degree[,] it could be considered adequate for a prison standard," but he argues that "the procedures employed at SCI[-]Houtzdale for review into his property loss were inadequate." (*Id*. at ¶ 8.) Burton argues that the DOC deprived him of his right to procedural due process by confiscating and damaging his property and by rejecting his grievance due to his failure to comply with the procedural requirements under the DOC's policy for post-deprivation remedy process. Burton asserts that he has demonstrated that procedural due process was not afforded to him and, specifically, "that the post-deprivation due process was not only inadequate, it was denied." (Burton's Br. at 2.) Finally, Burton agrees that to the extent his Petition for Review could be construed as raising a claim under Section 1983, this Court should construe it as such. (Response to PO ¶ 9.)

We address the DOC's claims in its preliminary objection in turn.

## III. DISCUSSION

In ruling on preliminary objections in the nature of a demurrer, while the Court must "accept as true all well-pleaded material facts" and all inferences reasonably deducible therefrom, the Court is not required to accept as true legal conclusions, unwarranted factual inferences, argumentative allegations, or expressions of opinions. *Armstrong Cnty. Mem'l Hosp. v. Dep't of Pub. Welfare*, 67 A.3d 160, 170 (Pa. Cmwlth. 2013) (en banc). Because

> the sustaining of a demurrer results in a denial of the [petitioner's] claim or a dismissal of [the petitioner's] suit, a preliminary objection in the nature of a demurrer should be sustained only in cases that clearly and without a doubt fail to state a claim upon which relief may be granted.

7

*Palmer v. Bartosh*, 959 A.2d 508, 512 n.2 (Pa. Cmwlth. 2008).

We begin with whether Burton has stated a claim for violation of his procedural due process rights. The Fourteenth Amendment to the United States Constitution provides that no "State [shall] deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. To maintain a due process challenge, a party must initially "establish the deprivation of a protected liberty or property interest." *Miller v. Workers' Comp. Appeal Bd. (Pavex, Inc.)*, 918 A.2d 809, 812 (Pa. Cmwlth. 2007). If the party establishes a deprivation of a protected interest, the Court will consider what type of **procedural mechanism** is required to fulfill due process. *Id.* For the purposes of this review, similar to the Court in *Shore*, we assume that the DOC deprived Burton of a legitimate property interest and focus on whether sufficient procedural protections were provided. *Shore*, 168 A.3d at 383.

In reviewing the adequacy of the procedural protections provided, "[t]he amount of process due depends on the context presented." *Silo v. Ridge*, 728 A.2d 394, 399 (Pa. Cmwlth. 1999). It is well-settled "that post-deprivation remedies satisfy the due process clause where the situation dictates that the State take immediate action or it is impracticable to provide any meaningful pre-deprivation process." *Shore*, 168 A.3d at 383 (citing *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 421 (3d Cir. 2000)).

In *Shore*, we examined the adequacy of the DOC's prison grievance system under due process and the requirements for a prisoner to state a proper procedural due process claim. There, an inmate brought a grievance after the DOC confiscated incoming photographs. The inmate argued that by not allowing him to view the photographs "and make meaningful arguments before an impartial tribunal," the

8

DOC violated his procedural due process rights. *Shore*, 168 A.3d at 382. We explained that

> [w]hen a prison official confiscates a prisoner's property in an allegedly unauthorized way, whether it be negligently or intentionally, **due process requires only the existence of an adequate post-deprivation remedy** because it is not feasible for a prison to provide a hearing prior to taking property that is perceived to be contraband or against prison regulations.

*Id.* at 383 (emphasis added) (citing *Hudson v. Palmer*, 468 U.S. 517, 533-34 (1984) (holding "that an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post[-]deprivation remedy for the loss is available")). We further examined the DOC's grievance procedure detailed in DC-ADM 804, the provision under which the DOC denied Burton's claim in the present case, and stated that "[i]n a string of unreported decisions, this Court has concluded that the [DOC's] grievance procedure in DC-ADM 804 is a constitutionally sufficient remedy with respect to inmates' claims that the [DOC] unlawfully withheld and/or confiscated personal property." *Shore*, 168 A.3d at 383 (collecting cases).

  *Shore* further indicates that where there is a constitutionally adequate post-deprivation remedy, "an inmate must exhaust the administrative grievance system in a complete and 'proper' manner, and this necessitates compliance with 'critical procedural rules.'" *Id.* (quoting *Kittrell v. Watson*, 88 A.3d 1091, 1095 (Pa. Cmwlth. 2014)). Particularly, "a prisoner must have utilized all available remedies in accordance with the applicable procedural rules, so that prison officials have been given an opportunity to address the claims administratively." *Id.* at 383-84 (quoting

*Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008)). Thus, in *Shore*, we held that there was no due process violation because the inmate did not properly exhaust his remedies in the grievance process, as he never actually had requested to review the confiscated photographs and nothing in DC-ADM 804 prohibited such a request. We explained that an inmate "cannot sit idly by during the grievance process and [then] complain that the procedure is deficient" before this Court. *Id.* at 384; *see also Hammond v. Pa. Dep't of Corr.* (Pa. Cmwlth., No. 265 M.D. 2017, filed Feb. 14, 2018), slip op. at 6 (holding that where a "policy is facially broad enough to allow an issue to be heard and relief to be granted, its procedure is presumptively both meaningful and adequate") (quotations omitted).[5] Thus, where an inmate is "afforded meaningful opportunities to respond" and "received written decisions from three different adjudicators within the" DOC, a claim for a violation of procedural due process will fail. *Shore*, 168 A.3d at 385. Accordingly, there is no procedural due process violation where there exists a constitutionally adequate post-deprivation remedy and the inmate fails to adhere to the DOC's policy for proper procedure within the grievance system. Our decision in *Shore* controls here.

In the present case, the DOC argues that Burton failed to take full advantage of the grievance policy by not complying with the procedural rules in place requiring that he attach proof of ownership of the property at issue. Burton filed his initial grievance on October 14, 2019, in which the DOC rejected the grievance on the grounds that Burton failed to comply with certain procedural requirements, namely, attaching proof of ownership for the property he claimed to be stolen or damaged.

---

[5] Though *Hammond* is unreported, unreported decisions of this Court, while not binding, may be cited for their persuasive authority pursuant to Pennsylvania Rule of Appellate Procedure 126(b), Pa.R.A.P. 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

Burton filed his second grievance on October 18, 2019, but again failed to attach the required documentation. On October 24, 2019, Burton appealed to the superintendent. Although Burton asked that the 15-day period to submit his grievance be excused, we note that the event about which Burton complains occurred on October 11 and Burton filed his appeal on October 24 with all of the required documentation. As the superintendent stated when rejecting Burton's grievance appeal, that Burton was able to submit this appeal with all of the required documents within 15 days of the incident's occurrence contradicts Burton's claim that he lacked sufficient time to comply with the grievance procedures.

Similar to the inmate in *Shore*, Burton "cannot sit idly by during the grievance process" by ignoring the procedural requirements for a proper grievance and then "complain that the procedure is deficient" before this Court. *Shore*, 168 A.3d at 384. Burton was "afforded meaningful opportunities to respond" by filing a proper grievance that complied with the procedural requirements and also "received written decisions from three different adjudicators" within the DOC explaining how his grievance was procedurally deficient. *Id*. at 385. Accordingly, Burton's "mere dissatisfaction with the outcome . . . does not equate to a denial of due process." *Id*. (citation omitted).[6]

---

[6] In addition, even if it is assumed that the grievance procedure was constitutionally inadequate, Burton may have an available post-deprivation remedy in the form of a state tort law action against the DOC or the CO to obtain monetary damages for his destroyed or stolen property or return of the photographs of his late father—an averment that this Court finds particularly disturbing—if they were non-contraband personal property. *See, e.g.*, *Morales-Vasquez v. Pa. Dep't of Corr.* (Pa. Cmwlth., No. 253 M.D. 2019, filed July 28, 2020) (explaining that a common law action for conversion is an adequate post-deprivation remedy that precludes any action for a violation of due process); *Hawkins v. Coleman Hall, C.C.F.*, 453 F. App'x 208, 210 (3d Cir. 2011) (same); *Austin v. Lehman*, 893 F. Supp. 448, 454 (E.D. Pa. 1995) (same).

We have explained that

**(Footnote continued on next page…)**

11

Therefore, Burton has failed to state a claim as a matter of law for a violation of due process, and, accordingly, we must sustain the DOC's objection as to this claim.

Related to Burton's due process claim, the DOC also contends that to the extent that Burton states a constitutional violation that could be construed as properly brought under Section 1983, this claim also fails because the DOC is not a "person." We agree.

Section 1983 provides, in relevant part:

> [e]very **person** who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any

---

> [i]n Pennsylvania, a tort law remedy is available for the possession and/or destruction of non-contraband personal property by virtue of [S]ection 8522(b)(3) of what is commonly referred to as the Sovereign Immunity Act, which waives immunity for negligent acts concerning "[t]he care, custody or control of personal property in the possession or control of Commonwealth parties, including . . . property of persons held by a Commonwealth agency."

*Shore*, 168 A.3d at 385 n.6 (quoting 42 Pa.C.S. § 8522(b)(3)). Thus, even if we determined that the procedure provided for in DC-ADM 804 is a constitutionally inadequate post-deprivation remedy, Burton's claim would be precluded by the availability of a tort claim for conversion against the DOC or the CO for damages from his destroyed or stolen property or return of the photographs of his deceased father.

We note that, as discussed in *Shore*, "[a]lthough this Court has held in unpublished decisions that an inmate may not assert the **intentional tort** of conversion against employees of the [DOC], at least to the extent the claim alleges willful misconduct, conversion does not always rest on proof of specific intent to commit a wrong." *Id*. (emphasis added) (citations omitted) (quotations omitted). Rather, "the tort may be based on good faith actions as well as the loss-occasioning carelessness resulting from [a] defendant's **negligence** for which damages may be recovered." *Id*. (emphasis added) (citations omitted) (quotations omitted). Accordingly, while Burton's claim of intentional wrongdoing would likely fail in a tort action, "it is possible that [Burton] has an adequate post-deprivation tort remedy against the [DOC's] employees for the **negligent** possession and/or destruction of the photographs" of Burton's deceased father. *Id*. (emphasis added) (citations omitted).

12

rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (emphasis added). Accordingly, to be subject to suit under Section 1983, the DOC must qualify as a "person" within the meaning of the statute.

However, "**Section 1983 does not create substantive rights** but, rather, is the vehicle for vindicating rights conferred in the United States Constitution or in federal statutes." *Jae v. Good*, 946 A.2d 802, 809 (Pa. Cmwlth. 2008) (emphasis added) (citing *Urbanic v. Rosenfeld*, 616 A.2d 46, 52 (Pa. Cmwlth. 1992)). In this respect, the Supreme Court further has held that "**a State is not a 'person' within the meaning of [Section] 1983**" and that while "Section 1983 provides a . . . forum to remedy many deprivations of civil liberties, . . . it does not provide a . . . forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties" due, in part, to State immunity under the Eleventh Amendment to the United States Constitution.[7] *Will*, 491 U.S. at 65-66 (emphasis added); *Warren*, 616 A.2d at 142 (holding that neither the Commonwealth nor the DOC is a person subject to suit under Section 1983). Thus, we find that Burton cannot use Section 1983 as a vehicle for his due process claim against the DOC and sustain the DOC's objection as to this claim.

However, with respect to Burton's remaining claims, because the DOC objected to Burton's claims for violations of the Fourth Amendment, Ninth Amendment, and DOC policy only in its brief to this Court, rather than raising the matter in its preliminary objections, we decline to consider them further. *See*

---

[7] The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI.

Pennsylvania Rule of Civil Procedure 1028(b), Pa.R.C.P. No. 1028(b) ("All preliminary objections shall be raised at one time."); *Buehl v. Beard*, 54 A.3d 412, 415 n.2 (Pa. Cmwlth. 2012) (noting that the DOC "made other challenges to the petition for review in its brief, but this Court did not consider them because they were not raised in its preliminary objections"), *aff'd*, 91 A.3d 100 (Pa. 2014).

## IV. CONCLUSION

For the reasons stated, we sustain the DOC's preliminary objection as to Burton's due process and Section 1983 claims. Because the DOC did not file preliminary objections to Burton's remaining claims, instead improperly raising its objections for the first time in its brief, the DOC is directed to file an answer to Burton's remaining claims within 30 days.

_____
**RENÉE COHN JUBELIRER,** Judge

14

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Burton,                         :
                    Petitioner          :
                                        :
            v.                          :    No. 705 M.D. 2019
                                        :
Pennsylvania Department of              :
Corrections,                            :
                    Respondent          :

# **O R D E R**

**NOW**, February 9, 2021, the Pennsylvania Department of Corrections' Preliminary Objection to the Petition for Review in the above-captioned matter is **SUSTAINED** as to Michael Burton's due process and 42 U.S.C. § 1983 claims. The Pennsylvania Department of Corrections is ordered to file its answer to the remaining claims in the Petition for Review within 30 days of this Order.

_____
**RENÉE COHN JUBELIRER,** Judge