IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Randy R. Pierce and Leslie Pierce,    :
husband and wife,    :
                    Appellants :
    :
          v.           : No. 1315 C.D. 2024
    : Submitted: November 6, 2025
    :
Conewango Township Municipal    :
Authority    :


BEFORE:   HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE STACY WALLACE, Judge
                HONORABLE MARY HANNAH LEAVITT, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                   FILED: December 22, 2025


     Randy R. Pierce and Leslie Pierce (the Pierces) appeal from the August 21, 2024 order of the Court of Common Pleas of the 37th Judicial District, Warren County Branch (the trial court),[1] sustaining the Conewango Township

---

[1] The Pierces filed a Praecipe for Entry of Judgment in the trial court, requesting the trial court's prothonotary reduce the trial court's August 21, 2024 order to a final judgment. *See* Reproduced Record (R.R.) at 2a, 233a-35a. Pennsylvania Rule of Civil Procedure 227.4 (Rule 227.4) requires certain trial court actions be reduced to judgment before an appeal, and in such circumstances, an appeal must be taken from the entry of judgment, not the underlying decision. *See* Pa.R.Civ.P. 227.4. Here, however, the trial court's August 21, 2024 order was not an order that needed to be reduced to judgment. *See* Pa.R.Civ.P. 227.4. Rather, the trial court's order was a final, appealable order because it disposed of all claims and all parties and was not an order identified in Rule 227.4. *See* Pa.R.A.P. 341(b); Pa.R.Civ.P. 227.4. Thus, the Pierces' appeal of the trial court's August 21, 2024 order is proper.

Municipal Authority's (Authority) preliminary objections and dismissing the Pierces' Amended Complaint (Complaint) with prejudice. On appeal, the Pierces assert the trial court committed errors of law when it concluded the Pierces failed to plead facts sufficient to establish the Authority had actual or constructive notice of a dangerous condition in its sewer system. The Pierces further assert the trial court erred because the ultimate fact-finder should have reviewed all of the evidence before determining whether the Authority had constructive notice of a dangerous condition.

Upon review,[2] we have determined that the trial court, in its comprehensive and well-reasoned Memorandum Opinion Pursuant to Pa.R.A.P. 1925(b), which the Honorable Gregory J. Hammond authored, succinctly set forth the background of this matter and appropriately resolved the Pierces' allegations of legal error. Accordingly, we affirm the trial court's order on the basis of the trial court's memorandum opinion in *Pierce v. Conewango Township Municipal Authority* (C.P. Warren, Civil Case No. 409 of 2023, filed October 1, 2024), a copy of which is appended to this Memorandum Opinion.

                                         _____

                                         STACY WALLACE, Judge

---

[2] "Where a trial court dismisses a complaint based on preliminary objections, this Court's review is limited to determining whether the trial court committed an error of law or an abuse of discretion." *Kittrell v. Watson*, 88 A.3d 1091, 1095 (Pa. Cmwlth. 2014) (citations omitted).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Randy R. Pierce and Leslie Pierce,  :
husband and wife,  :
                  Appellants :
  :
        v.  :  No. 1315 C.D. 2024
  :
Conewango Township Municipal  :
Authority  :

# **O R D E R**

     **AND NOW**, this 22nd day of December 2025, the August 21, 2024 order of the Court of Common Pleas of the 37th Judicial District, Warren County Branch, is **AFFIRMED**.

_____
STACY WALLACE, Judge

RANDY R. PIERCE and LESLIE PIERCE,
husband and wife,
      Plaintiffs,

    vs.

No. 409 of 2023

CONEWANGO TOWNSHIP MUNICIPAL
AUTHORITY,
      Defendant.

## MEMORANDUM OPINION PURSUANT TO PA.R.A.P. 1925(b)

Presently before the Court is the Notice of Appeal filed by the Plaintiffs on September 11, 2024 from the Order of this Court dated August 21, 2024 sustaining Defendant's preliminary objections and dismissing Plaintiff's Amended Complaint with prejudice. The Court entered a brief opinion on the record following argument on Defendant's Preliminary Objections to Plaintiff's Amended Complaint *See Arg. Tr. August 21, 2024 at 16:16-18:11.* This opinion is intended to supplement that opinion.

## APPELLATE JURISDICTION

Following this Court's opinion on the record, the Court advised Plaintiffs of their right to appeal to the Commonwealth Court. *See Arg. Tr. August 21, 2024 at 18:12-13.* As the Defendant

1

is a municipal entity, the Commonwealth Court has jurisdiction over this appeal pursuant to **42 Pa.C.S.A. §762(a)(4)(i)** and/or **42 Pa.C.S.A. §762(a)(7)**. *See also **Brady Contracting Co. v. West Manchester Twp. Sewer Auth.**,* 487 A.2d 894, 897 (Pa.Super.1985).[1] This Court believes that jurisdiction over this appeal is properly with the Commonwealth Court.

## PROCEDURAL AND FACTUAL BACKGROUND

The Plaintiffs commenced this action by filing a Praecipe for Writ of Summons against Conewango Township Municipal Authority ("CMTA") on October 2, 2023. In response, on November 9, 2023, CMTA filed a Praecipe for Rule to File Complaint. Plaintiffs filed a Complaint on February 14, 2024, asserting a claim for negligence and loss of consortium.[2] The Plaintiffs reside 3296 Jackson Run Road, Warren, Pennsylvania 16365 (hereinafter "property") located within Conewango Township. Plaintiffs' property has two clean out manholes, with the one located next to the driveway being the subject of this action ("manhole").

Plaintiffs assert that on June 25, 2022, Plaintiff Randy Pierce ("Mr. Pierce") stepped out of his backhoe onto the steel cover of the manhole. Plaintiffs allege that the cover to the manhole was not properly secured and as a result, the cover pivoted, causing Mr. Pierce to fall into the manhole. Consequently, Mr. Pierce experienced immediate pain and aggravated a pre-existing back injury. In support, Mr. Pierce cites the following specific injuries:

A) Fracture to his tooth number 10 and loosening of teeth 7 through 11;
B) Injuries to his cervical spine, C1, C4, C5 and C7 on the left, and his T1 through T5;
C) Injuries to his right knee;

---

[1] The Pennsylvania Superior Court held that the Commonwealth Court had exclusive jurisdiction over a local agency under the Political Subdivision Tort Claims Act pursuant to 42 Pa.C.S. §762(a)(7).

[2] Plaintiffs do not specifically cite to a specific cause of action, common law or otherwise, in their Complaint. However, this Court can adduce from Plaintiffs' legal argument that Plaintiffs seek to argue negligence and a loss of consortium.

D) Decreased circulation in his right lower leg/calf causing his leg to feel cold; and
E) "Great pain and suffering."

Mr. Pierce demands expenses of treatment in the amount of $5,772.55 as of the date of the Complaint, in addition to damages for "serious pain and suffering, inconvenience, interference with activities of daily living, walking, standing, sleeping, driving, which interferences will continue in the future." *See* **Plaintiffs' Complaint, ¶10.**

Plaintiff Leslie Pierce ("Mrs. Pierce") contends that she has experienced loss of the care, society, assistance, and companionship of her husband, as well as disruption to her daily habits, pursuit, and enjoyment of life. Mrs. Pierce also alleges lost wages due to the necessity of driving her husband to appointments and treatment.[3] In total, the Plaintiffs demand judgment of $50,000.00 with interest and costs of suit.

Plaintiffs allege, in summary, that CTMA was negligent in the following manner:

A. By failing to maintain the manhole in such a condition as to prevent injuries to Mr. Pierce;
B. By maintaining a dangerous condition located in the right-of-way, creating an unreasonable risk of the kind of injury which was incurred by Mr. Pierce and which imposed liability on the municipality pursuant to the PSTCA;
C. By failing to properly secure the cover to the manhole, or, in the alternative, by installing a manhole cover which was not a proper size.

*See generally,* **Plaintiffs' Complaint, ¶6.**

Defendant filed Preliminary Objections in the nature of a demurrer and Brief in Support on March 11, 2024. While citing immunity under the Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa.C.S.A. §8542(b)(5), CMTA further argued that Plaintiffs had not pled facts "establishing that CTMA had either actual or constructive notice of the alleged condition of the manhole, which is required to invoke the utility service facilities exception to governmental immunity." *See* **Defendant's Preliminary Objections, ¶4.**

---

[3] Plaintiffs do not assert a specific amount for Mrs. Pierce's lost wages.

Argument on Defendant's preliminary objections was held on April 10, 2024, wherein this Court sustained Defendant's preliminary objections and ordered Plaintiffs to file an Amended Complaint within twenty (20) days of the Order. Plaintiffs filed an Amended Complaint on April 29, 2024. In an attempt to establish actual or constructive notice, Plaintiffs set forth a string of incidents which Plaintiffs argue individually or collectively are sufficient to establish notice. Plaintiffs plead the following facts in support, as summarized by this Court:

In 2004, CTMA and the previous owner of the property agreed that CTMA would retain a sewage grinder pump until such time as the new owner of the property was ready to connect to the sewer system. On March 19, 2009, Conewango Township Sewage Enforcement Officer Todd Fantaskey sent Plaintiffs a letter indicating that the wastewater management system on the property was inadequate. Following this letter, Plaintiffs obtained a grinder pump from CTMA. Plaintiffs then installed the grinder pump thereafter and connected the property to the sewer system. This pump was later inspected and approved by Charles Barone.[4] On January 18, 2023, Plaintiffs received a letter from Conewango Township's solicitor, Andrea Stapleford, Esq., asserting that CTMA had a right to enter the property "for purposes of inspecting, maintaining, and other similar tasks related to the sewer line…". *See* **Plaintiff's Amended Complaint, ¶15**. *See also* **Plaintiff's Amended Complaint, Exhibit "D"**.

In response to a lack of water at Plaintiffs' property, CTMA hired A&B Heating ("A&B") to inspect the pump. A&B subsequently determined that the pump was not functioning property. A&B thereafter replaced the pump and serviced the line. Plaintiffs argue that any and all of these events led to CTMA being on notice of the alleged dangerous condition and consequently, resulted in negligence on behalf of CTMA.

---

[4] Plaintiffs fail to plead the relation of Mr. Barone to either, or both, of the parties.

Defendant filed Preliminary Objections to Plaintiffs' Amended Complaint and Brief in Support on May 28, 2024. The issues raised in Defendant's second set of Preliminary Objections mirrored that of Defendant's first set of Preliminary Objections. Specifically, Defendant asserted, and this Court agrees, that Plaintiff's Amended Complaint had failed, again, to establish the sufficient notice required under the utility service facilities exception to the PSTCA.

Following argument on August 21, 2024, the Court sustained Defendant's Preliminary Objections to Plaintiffs' Amended Complaint and dismissed the action with prejudice. On the same date, the Court advised the Plaintiff on the record and in its written order of their appeal rights.

Plaintiffs filed this timely Notice of Appeal on September 11, 2024. By Order on the same date, the Plaintiffs were directed to file a Concise Statement of Matters Complained of on Appeal[5]. On September 26, 2024, Plaintiffs filed a timely Concise Statement and set forth the following issues on appeal as summarized by this Court:

**Did the Court err as a matter of law in dismissing Plaintiffs' Amended Complaint alleging actual notice to the Defendant based on the allegations in the Complaint and the in finding that Defendant did not have actual notice of the dangerous condition based on the allegations in the Complaint exhibits attached thereto?**

**Did the Court err as a matter of law in dismissing Plaintiffs' Amended Complaint with prejudice by rejecting the allegations of constructive notice as it is a question for resolution by the finder of fact?**

---

[5] This Court inadvertently instructed Defendant to file a Concise Statement of Matters Complaint of on Appeal. An Amended Order correcting this was issued on September 19, 2024.

# DISCUSSION

## I.    Standard for Preliminary Objections

Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. *Feingold v. Hendrzak*, 15 A.3d 937, 941 (Pa.Super.2011). When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. *Id.* Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. *Id.* (emphasis added). If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections. *Id.* Initially, the first hurdle Plaintiffs face is to overcome the indemnification of local agencies as provided for in the Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa.C.S.A. §8542(b)(5).

## II.    Indemnification and Exceptions under PSTCA

The PSTCA indemnifies local agencies against "any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person" unless expressly excluded by the PSTCA. **42 Pa.C.S.A. §8541**. A local agency is defined as "government unit[s] other than the Commonwealth government." **42 Pa.C.S.A. §8501**. CTMA is a local agency as defined under this section and therefore, the indemnity provision applies absent an exception otherwise provided under the PSTCA.

6

Section 8542 of this Act provides for exceptions to governmental immunity. For liability to be imposed on a government entity under this section, both of the following conditions must exist:

> (1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and
> (2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b)…

**42 Pa.C.S.A. §8542(a).**

The act which imposes liability must fall under an exception listed in subsection (b) of this chapter. Here, Plaintiffs claim that CTMA should be held liable under the "[u]tility service facilities" exception. This exception applies if the following is present:

> A dangerous condition of the facilities of steam, sewer, water, gas or electric systems owned by the local agency and located within rights-of-way, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had **actual notice or could reasonably be charged with notice** under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

**42 Pa.C.S.A. §8542(b)(5)** (emphasis added).

The Commonwealth Court has indicated "[i]n accordance with the General Assembly's expressed intent to insulate local agencies from tort liabilities, the statutory language of the exceptions to governmental immunity contained in Subsection 8542(b) of the Tort Claims Act must be construed *narrowly;* immunity remains the rule." ***King v. Pittsburgh Water & Sewer Auth.,*** 139 A.3d 336, 353 (Pa. Commw. 2016) (emphasis added) (internal citations and quotations omitted).

Simply stating, "to hold a political subdivision liable for damages, a plaintiff must first demonstrate a claim under the common law and, next, an exception to immunity." ***Howarth v.***

*Falls Township*, 310 A.3d 336, 343 (Pa. Commw. Ct. 2024). Here, Plaintiffs plead that Defendant was negligent in failing to maintain the manhole cover. Even assuming, *arguendo*, that Plaintiffs could prove a claim under common law negligence, an exception to immunity does not apply.

III.    Purported Events Establishing Notice

Plaintiffs attempt to demonstrate notice of an alleged dangerous condition through three events prior to Mr. Pierce's injury, and three events following the injury. First, Plaintiffs cite to a purported agreement in 2004 between CTMA and a now-deceased former owner of the property at issue, in which CTMA agreed to retain a sewage grinder pump "until such time as the new owner was ready to connect the property to the sewer system." *See Amended Complaint*, ¶8. By Plaintiffs' logic, CTMA should have known that a dangerous condition might exist eighteen years in the future, should be tasked with regularly inspecting said grinder pump, and should be liable for any damages caused by an unforeseeable condition. Plaintiffs apparently claim that this liability should exist even though a new owner had connected to the sewer system at the time of this alleged dangerous condition, making this agreement moot at the outset of Plaintiffs' ownership.

Next, Plaintiffs cite to a letter received Conewango Township Sewage Enforcement Officer Todd Fantaskey in March 2009, *thirteen years* prior to the injury, which indicated that the property's wastewater management system was insufficient, and that the property should be connected to the sewer system. This triggered Plaintiffs to obtain a sewage grinder pump from CTMA, in which *Plaintiffs installed* and connected the property to the sewer system. Therefore, Plaintiffs' reason that CTMA should have had the insight to expect a dangerous condition from providing a grinder pump to Plaintiffs thirteen (13) years earlier, to which they did not install or connect to the sewer system. Because this notice was so remote in time, this also does not meet

8

the criteria of notice "a sufficient time prior to the event to have taken measures to protect against the dangerous condition." **42 Pa.C.S.A. §8542(b)(5)** (emphasis added).

After the sewer service had been connected, Plaintiffs notified Charles Barone who came to the Plaintiff's property to inspect the pump installation. *See* **Plaintiff's Amended Complaint**, ¶13. Plaintiffs "do not know the date of the inspection by Charles Barone, but the power was on to the grinder pump and the alarm light and alarm buzzer were operational...." *Id.* at ¶14. This Court is unable to ascertain the relationship of Charles Barone to Defendant, and when this event occurred so as to purportedly put Defendant on notice. This is the last event cited *prior* to Mr. Pierce's injury.

Following Mr. Pierce's injury on June 25, 2022, Plaintiffs cite to a letter from the Conewango Township solicitor dated January 18, 2023, "informing the Plaintiffs that the Township had the right to enter onto the Plaintiffs' property as it had a right of way for purposes of inspecting, maintaining, and other similar tasks related to the sewer line without permission." *Id.* at ¶16, *See also* **Plaintiffs' Amended Complaint, Exhibit "D"**.

Plaintiffs also cite to a letter from Conewango Township's solicitor dated April 19, 2023 explaining that CTMA received a report that there was no water service and an inspection was required. Following this letter, CTMA utilized A&B Heating to inspect, service and replace the grinder pump on April 20, 2023. Both of these events are irrelevant, as both occurred following the injury to Mr. Pierce.

IV.    Lack of Actual Notice

CTMA did not have actual notice of the alleged dangerous condition. The Commonwealth Court of Pennsylvania has given examples of actual notice such as an authority receiving

9

complaints, damage reports, repair orders or other records pertinent to the condition at any time prior to the accident. *See King* 139 A.3d 366 at 340.

Here, the most recent reference Plaintiffs can make to the manhole at issue (and notably, not a situation pertaining to the sufficiency of the stability of the covering of the manhole) is 2009, *thirteen years prior* to Mr. Pierce's injury. Moreover, this was simply a notification that the property's wastewater management system was insufficient. Plaintiffs do not cite anyone from CTMA in 2009 going out to the property, or, any time thereafter, prior to the injury so as to constitute actual notice. This is certainly not a situation that permits CTMA to be "reasonably charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition." **42 Pa.C.S.A. §8542(b)(5)**.

### V.  Lack of Constructive Notice

Plaintiffs allege that Defendant could reasonably be charged with notice under the circumstances of the dangerous condition, so as to put Defendant on constructive notice. Specifically, Plaintiffs argue that Defendant "by virtue of its right of way and its assertion to Plaintiffs that it had a right of way to inspect and maintain the sewer facilities" had constructive notice of the alleged dangerous condition. *See Plaintiffs Amended Complaint,* ¶21. Plaintiffs conclude that the utilities service exception to indemnification should apply because "[Defendant] failed [to inspect and maintain the sewer facilities] on a regular basis, and did not inspect the facilities until they received a complaint...." *Id.*

Plaintiffs conflate Defendant's *ability* to inspect as referenced in the solicitor's letter, with an *affirmative duty* to inspect. This Court agrees with Defendant that this assertion of an ongoing

10

affirmative duty has been rejected by the Commonwealth Court. In **King**, wherein the Plaintiff ("Ms. King") fell into a sewer grate injuring her leg, Ms. King attempted to argue that the Defendant ("Sewer Authority") should have had constructive notice:

> [b]y including the constructive notice provision in [the utility service facilities exception], it is evident the General Assembly sought to impose a duty on local agencies that own sewer facilities to take reasonable measures to inspect and maintain those facilities, even when not given actual notice that a defect or dangerous condition exists.

**King**, 139 A.3d 336 at 350.

The Commonwealth Court expressly rejected Ms. King's argument. In doing so, the Court pointed out that Ms. King presented no evidence that the Sewer Authority received any complaints regarding the sewer grate at issue or any other grates at the same intersection. *Id.* Similarly, here, Plaintiffs presented no evidence of a complaint pertaining to the manhole cover *ever*, let alone recent enough to put CTMA on notice.

The Commonwealth Court in **King** also rejected Plaintiffs' notion that CTMA has a duty to "regularly inspect" its facilities and that CTMA was negligent in not inspecting the manhole until it received a complaint. In doing so, the Court cites **Gramlich** for its interpretation of the constructive notice language, observing "it is unreasonable to require a municipality to patrol its streets every day for possible defects created by its citizens that may subject it to liability." *Id.* **at 352**, citing **Gramlich v. L. Southampton Twp.**, 838 A.2d 843 (Pa.Cmwlth.2003).

Therefore, CTMA has no duty to take a proactive approach in patrolling and inspecting every manhole in its municipality. CTMA is not negligent for reactively, instead of proactively, servicing its facilities following complaints or reports of defects. Here, Plaintiffs neither made such a report pertaining to the manhole cover or were able to provide any. Consequently, CTMA could not be reasonably charged with notice under the circumstances of the dangerous condition.

11

Plaintiffs allege that the Trial Court erred as a matter of law in rejecting the allegations of constructive notice "as it [is] (sic) a question for resolution by the finder of fact." *See* Plaintiffs' Statement of Matters Complained of on Appeal, ¶2.

## VI. Notice as Question for the Factfinder

Plaintiffs are partially correct, in that whether a local agency had constructive notice of a dangerous condition is a question of fact for the jury. ***Angell v. Dereno***, 134 A.3d 1173, 1181 (Pa. Cmwlth. 2016). However, a court may decide whether a municipality had either constructive notice of a dangerous condition when **reasonable minds could not differ as to the conclusion**. *Id.* at 1181 (internal citations and quotations omitted; emphasis added). If there is any dispute created by the evidence, the court is not permitted to decide the issue. *Id.* at 1182 (quotations omitted). Even

### i. *Angell v. Dereno, et. al*

In ***Angell***, Plaintiff's son was killed when his motorcycle was clipped by on oncoming truck that was located within the boundary between Ross Township ("Township") and West View Borough ("Borough") (together collectively "municipalities") on Bellevue Avenue. Plaintiff sued the driver of the vehicle, the Township, and the Borough in a wrongful death and survival action. Relevant here, the Plaintiff claimed that the intersection that the accident occurred in created a dangerous condition due to the lack of traffic controls and narrowness of the road. Plaintiff's complaint asserted that the claims against the municipalities fell within the "streets" exception to the governmental immunity in the Political Subdivision Tort Claims Act.

Defendants filed answers denying liability, and the parties engaged in discovery. Plaintiff secured affidavits from neighbors who described "seeing officers from both municipalities patrolling the intersection...before the fatal accident." *Id.* at 1177. Further, one of the neighbors

12

attested that prior to the accident, she personally tried to get the Borough to install a stop sign on the top of the hill. *Id.* Plaintiff also obtained an expert who agreed that the narrowness of the roadway, on-street parking, and limited sight distance created a dangerous roadway condition that was a substantial contributing factor to the crash, which "should have been apparent to both municipalities..." *Id.*

The municipalities moved for summary judgment arguing that the evidence did not create triable issues of fact on causation, duty, and prior notice. *Id.* at 1178. The trial court dismissed Angell's claim against the municipalities with prejudice. In its opinion, the trial court found that the neighbors' affidavits did not establish that the municipalities had actual notice. However, the Court did not discuss constructive notice or the expert's opinion that the danger should have been apparent to the municipalities. In her appeal, Plaintiff argued that the question of actual or constructive notice of a dangerous condition is a jury question, and the trial court erred by finding facts on this issue.

In arguing her appeal, Angell reasoned that the Borough had actual notice based on the complaints made by two of the neighbors, as this evidence was *specific on the location and type of dangerous condition. Id.* at 1181 (emphasis added). Furthermore, Angell argued constructive notice was established by the police officers being present on patrol at or near the intersection. In response, in relevant part, the Borough argued that the neighbors' affidavits were not specific enough on the danger to constitute actual notice, and because there was no evidence of a previous sideswipe, the patrol of the officers near the crash site could not constitute constructive notice.

The appellate court disagreed, noting that one of the neighbors specifically told the Borough that a stop sign was needed at the intersection, which was the same conclusion reached by the expert. In short, there was a factual dispute on the question of constructive notice. This is

13

because a jury could determine that a too-narrow street with limited sight distance could be apparent upon reasonable inspection, and therefore notice was present. *Id.*

### ii. Legal Standard at Issue as Applied to *Angell*

In *Angell*, the Court weighed the evidence as it pertained to a motion for summary judgment. In the case at bar, this Court was faced with second preliminary objections following Plaintiffs' Amended Complaint. The issued raised in the second set of preliminary objections were identical to those raised by Defendants in the first set, as Plaintiffs failed to correct the insufficiency in their Amended Complaint.

While both methods aim to resolve cases without trial, they apply different standards and are used at different stages of litigation. The standard for summary judgment is a more comprehensive review, as it considers all pleadings and admissible discovery. In comparison, preliminary objections only address the sufficiency of the complaint. Therefore, the court need not speculate as to what evidence *could* be presented, but rather, only the averments and support for the legal threshold contained in the complaint (or in this case, Plaintiffs' Amended Complaint).

### iii. Factual Scenario at Issue as Applied to *Angell*

In *Angell*, there was evidence that the municipalities were put on actual notice by the neighbors alerting Defendants to the dangerous condition at the exact area and regarding one of the potential causes of the accident. Here, the Pierces, nor anyone else, *ever* put the Authority on notice of an issue pertaining to the manhole cover. While Pierces allege that the events described in their Amended Complaint constitute notice, none of those events pertain to the specific alleged dangerous condition, and perhaps most notably, were *at least* thirteen (13) years prior to the accident.

14

While *Angell* does not discuss the proximity in time between the neighbor complaints and the accident, there is also a different in the nature of the alleged dangerous condition. The condition in *Angell* is a fixed condition that likely would not change much day-to-day as it related to a traffic pattern and width of a road. Here, the manhole cover presumably shifts and moves based on weather, foot and/or vehicle traffic over top of the cover, among other factors.

The trial court, and subsequently, the Superior Court in *Angell* also considered the expert report provided by Ms. Angell in that matter due to the nature of the stage of litigation. Here, this Court need not go that far. Rather, as explained above, this Court must only look at the averments in the Amended Complaint and the legal sufficiency of the same. Arguably, although the Court may only dismiss the matter if it appears with certainty that the law would not permit recovery, the totality of the scope of matters to consider is confined to the four corners of the [amended] complaint, and the legal sufficiency of what is plead.

Here, Plaintiffs do not plead facts even remotely as relevant or persuasive as those in *Angell*, even with two bites at the apple to do so. As such, this Court correctly found that reasonable minds could not differ as to the conclusion that notice, actual nor constructive, is present in the case at bar. Even if all of all material facts set forth in the Amended Complaint are taken to be true, as well as all inferences reasonably deducible therefrom, reasonable minds could not differ as to whether those allegations comprise constructive notice of a defective manhole. They do not.

### CONCLUSION

Plaintiffs fail to establish the required notice, actual nor constructive, as required for the utility service facilities exception to governmental immunity under the PSTCA. For the foregoing reasons, this Court properly concluded that Plaintiffs' Complaint failed to set forth a cause of action

15

against the Defendant for negligence and loss of consortium. Therefore, this Court properly sustained Defendant's Preliminary Objections and dismissed the Plaintiffs' Amended Complaint with prejudice.

No further Opinion shall follow.

**October 1, 2024**

_____

**GREGORY J. HAMMOND, J.**

FILED

2024 OCT -1 PM 3:04

WARREN COUNTY
PROTHONOTARY/
CLERK OF COURTS