# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Denzil Wagoner, III,           :
              Petitioner     :
                                 :

          v.               :    No. 494 C.D. 2025
                                 :

Pennsylvania Parole Board,    :    Submitted: May 18, 2026
              Respondent   :

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE MATTHEW S. WOLF, Judge
              HONORABLE MARY HANNAH LEAVITT, Senior Judge

## _OPINION NOT REPORTED_

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                 FILED: June 2, 2026

Denzil Wagoner, III (Petitioner), by counsel, petitions this Court for review of the Pennsylvania Parole Board's (Board) decision mailed on February 11, 2025. Therein, the Board denied Petitioner's request for administrative relief from the Board's prior decision, mailed on September 26, 2024, which recommitted him as a convicted parole violator (CPV) to serve 12 months' backtime,[1] recalculated his maximum sentence date, and denied him credit for time spent at liberty on parole.[2] Petitioner contends that the Board erred in recalculating his maximum sentence date after his conviction as a parole violator. He also argues this Court has jurisdiction over his appeal because his Petition for Review was timely filed under the prisoner mailbox rule. On June 13, 2025, the Board filed an Application for Summary Relief and Motion

---

[1] "Backtime" is the portion of a judicially-imposed sentence that a parole violator must serve as a consequence of violating parole before he is eligible for reparole. _Krantz v. Pennsylvania Board of Probation & Parole_, 483 A.2d 1044, 1047 (Pa. Cmwlth. 1984).

[2] The time a parolee spends at liberty on parole is also referred to as "street time." _Dorsey v. Pennsylvania Board of Probation & Parole_, 854 A.2d 994, 996 n.3 (Pa. Cmwlth. 2004).

to Quash the Petition as untimely. Upon review, we grant the Board's Motion and quash the appeal for lack of jurisdiction due to untimeliness.

## I. Facts and Procedural History

On November 29, 2021, Petitioner entered a guilty plea in the Delaware County Court of Common Pleas (trial court) to one count of Fleeing or Attempting to Elude Police Officer and was sentenced to a period of not less than one year and nine months', nor more than three years and six months' confinement at a State Correctional Institution (SCI). Petitioner's minimum and maximum sentence dates were January 21, 2023, and October 21, 2024, respectively. (Certified Record (C.R.) at 1.)

On October 13, 2022, the Board issued a decision granting Petitioner parole. On January 23, 2023, the Board released him from SCI-Coal Township to a Delaware State detainer. *Id.* at 4, 7, 8, 12, 30. As a condition of his parole, he was instructed that upon release from the Delaware State detainer, or if released by the authorities prior to his Pennsylvania maximum date of October 21, 2024, he was to report within 48 hours to the Norristown Sub Office in Norristown, Pennsylvania. *Id.* at 8, 12. On August 8, 2023, the Board declared Petitioner delinquent, effective July 28, 2023. *Id.* at 14.

On September 24, 2023, while on parole, the Upper Chichester Police arrested Petitioner and charged him with Aggravated Assault, Harassment, Flight to Avoid Apprehension, Simple Assault, Terroristic Threats, Stalking, Recklessly Endangering Another Person, and Possession of a Weapon. The Magisterial District Court Judge set secure bail and Petitioner was detained at the George Hill Correctional Facility. Petitioner did not post bail. *Id.* at 15, 16, 27, 53. On the same day, the Department of Corrections (DOC) issued a warrant to commit and detain Petitioner. *Id.* at 15. On October 5, 2023, the Board ordered him detained pending disposition of the criminal charges. *Id.* at 14-19. The Board also recommitted Petitioner as a technical parole violator (TPV) for up to six months for multiple parole violations, which included changing his residence without permission and failing to report to his

parole officer as instructed. His new maximum sentence date was recalculated to be December 18, 2024, but was subject to change in the event he was convicted of the pending criminal charges against him. *Id.* at 16-18.

Petitioner pled guilty to the new charges of making Terroristic Threats and Harassment, and on July 15, 2024, the trial court sentenced Petitioner to a period of 6 to 23 months' county incarceration and 1 year of probation to run concurrently. *Id.* at 36, 37, 65, 86. On August 12, 2024, the Board provided Petitioner with a Notice of Charges and Parole Revocation Hearing, which he signed. *Id.* at 22. On the same day, Petitioner waived his right to a hearing and counsel for his parole violation proceedings. *Id.* at 24. On September 23, 2024, the Board contacted the sentencing judge to inquire as to when Petitioner would be released from county confinement so the Board could pursue parole revocation hearings. It stated:

> Please advise, if your intent is to parole this offender and make him available to the [] Board, we require an order stating as such. If the offender has not completed the aforementioned sentence, he/she must be returned to the county prison to complete this sentence.
>
> If we do not receive such an order within 10 business days or notification that the offender has not completed the sentence, we will presume the offender paroled effective the date he/she was returned to an SCI.

*Id.* at 65. On the same day, the Board received an email stating that Petitioner had completed his county sentence and was now in SCI-Smithfield. *Id.* at 67. Petitioner had been returned to SCI-Smithfield on September 11, 2024. *Id.* at 68. On September 26, 2024, the Board issued a decision, (mailed on October 8, 2024), recommitting Petitioner as a CPV to a term of 12 months based on his new criminal convictions and recalculated his maximum sentence date as June 10, 2026. The Board did not award Petitioner credit for time spent at liberty on parole because it determined "the offender's behavior reflects domestic violence issues that warrant denying credit for time spent at liberty on parole." *Id.* at 69, 71, 72.

3

On October 31, 2024, the Board received Petitioner's *pro se* administrative remedies form appealing the calculation of his maximum sentence date. *Id.* at 73. On February 11, 2025, the Board mailed its response to Petitioner's request for administrative relief, which affirmed its September 26, 2024 decision. *Id.* at 85-87. The Board's response stated, "[i]f you wish to appeal this decision, you must file an appellate petition for review with the Commonwealth Court within thirty (30) days of the mailing date of the Board's response." *Id.* at 87.

In April of 2025, this Court received and docketed Petitioner's *pro se* Petition for Review.[3] On June 5, 2025, Petitioner, through appointed counsel, filed an Amended Petition for Review. On June 13, 2025, this Court issued an order indicating that the Petition for Review may be untimely and directing the parties to address the issue of timeliness in their principal briefs on the merits or in an appropriate motion. On the same day, the Board filed an Application for Summary Relief and Motion to Quash Untimely Appeal. On June 18, 2025, Petitioner filed an Answer and Statement of Disputed Facts in response to the Board's Application for Summary Relief. The Board then filed a Reply to Petitioner's Answer to Board's Application for Special Relief.

The parties' principal briefs have now been filed and the case is before this Court for decision.

## II. Issues

Petitioner first contends that under the prisoner mailbox rule, his Petition for Review was timely, even though the envelope in which the appeal was mailed was postmarked on April 14, 2025, and the appeal was received and docketed by the Commonwealth Court on the same date. Petitioner asserts that the Petition for Review

---

[3] This Court marked Petitioner's *pro se* Petition for Review as filed on April 14, 2025, in accordance with the "prisoner's mailbox rule," set forth in Pennsylvania Rule of Appellate Procedure (Pa.R.A.P. 121(f).

was dated and placed in the prison mailbox at SCI-Chester on March 13, 2025, the last day for a timely appeal from the Board's February 11, 2025 decision. He also maintains that he has substantially complied with Pa.R.A.P. 121(f) by providing evidence that his appeal was timely filed. (Petitioner's Br. at 1-3.) On the merits, Petitioner argues that the Board erred when it awarded him no backtime credit toward his original sentence for time he spent confined in the county prison on his new charges that was not credited to his new conviction and was solely the result of a state detainer. (Petitioner's Br. at 12-14.)

The Board asserts Petitioner has not met his burden of establishing the timeliness of his appeal because he has presented this Court with no valid, reasonably verifiable evidence of the date his Petition for Review was deposited in the prison mailbox. (Board's Br. at 9-13.) On the merits of the appeal, the Board contends that it correctly calculated Petitioner's new maximum sentence date. The contend that the time period from Petitioner's sentencing on July 15, 2024, until his return to an SCI on September 11, 2024, cannot be applied to his original sentence because he was not available to the Board for revocation proceedings until he was transferred from the county prison to an SCI on September 11, 2024. (Board's Br. at 1-17.)

### III. Discussion[4]

Preliminarily, we must address the jurisdictional issue of timeliness.[5] An inmate's failure to file a timely petition for review from the Board's response to his or her request for administrative relief deprives this Court of jurisdiction to consider the

---

[4] Our standard of review in parole revocation cases is limited to determining whether the Board committed an error of law, whether its findings are supported by substantial evidence, and whether its decision violated constitutional rights. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

[5] Because the issue of whether a court has jurisdiction to review an appeal raises a question of law, our standard of review is *de novo* and our scope of review is plenary. *Pennsylvania Manufacturers' Association Insurance Company v. Johnson Matthey, Inc.*, 188 A.3d 396, 398 (Pa. 2018).

5

merits of his or her appeal.  *Pennhurst Medical Group, P.C. v. Department of Public Welfare*, 796 A.2d 423, 425 n.2 (Pa. Cmwlth. 2002); *see also Riverlife Task Force v. Planning Commission of City of Pittsburgh*, 966 A.2d 551, 556-57 (Pa. 2009) (holding that the issue of timeliness "is a threshold question that implicates this Court's jurisdiction").  Pa.R.A.P.  1512(a)(1) provides that "[a] petition for review of a quasi[-]judicial order . . . shall be filed with the prothonotary of the appellate court within 30 days after the entry of the order."  Pa.R.A.P. 1512(a)(1).  In addition, "the court may not enlarge the time for filing a . . . petition for review[.]"  Pa.R.A.P. 105(b).

Under the prisoner mailbox rule, a prisoner's *pro se* appeal is deemed filed at the time it is given to prison officials or put in the prison mailbox.  *Kittrell v. Watson*, 88 A.3d 1091, 1096 (Pa. Cmwlth. 2014); *see also Smith v. Pennsylvania Board or Probation & Parole*, 683 A.2d 278, 283 (Pa. 1996).  In addition, Pa.R.A.P. 121(f) provides as follows:

> **Date of filing for incarcerated persons.**--A *pro se* filing submitted by a person incarcerated in a correctional facility is deemed filed as of the date of the prison postmark or the date the filing was delivered to the prison authorities for purposes mailing as documented by a properly executed prison cash slip or other reasonably verifiable evidence.

Pa.R.A.P. 121(f).

"In order to benefit from the [prisoner mailbox] rule [a prisoner] bears the burden of proving that he timely deposited his . . . appeal in the prison mailbox."  *Kittrell*, 88 A.3d at 1097; *Brown v. Greene County Office of District Attorney*, 700 A.2d 423 (Pa. 1997).  A prisoner may meet his burden of proving when this occurred by providing "any reasonably verifiable evidence of the date that the prisoner deposits the appeal," including "certificates of mailing, cash slips, affidavits, [or] prison operating procedures."  *Sweesy v. Pennsylvania Board of Probation & Parole*, 955 A.2d 501, 503 (Pa. Cmwlth. 2008); *see also Commonwealth v. Jones*, 700 A.2d 423, 426 (Pa. 1997)

6

(citation omitted).[6] For example, in *Commonwealth v. Jones*, our Supreme Court found that an inmate's notice of appeal was timely filed when he produced a United States Postal Service Form 3800, Certified Mail, that indicated that he had mailed his appeal during the appeal period even though the court prothonotary received the appeal after the appeal period had elapsed. *Jones*, 700 A.2d at 426. In *Barros v. Martin*, 92 A.3d 1242 (Pa. 2014), a prisoner provided the necessary evidence to demonstrate compliance with the prisoner mailbox rule by providing a certified mail domestic return receipt which showed the date that an agent of the intended recipient received the filing and also showed the cost of mailing. Moreover, he attached two cash slips for postage for legal mail and for the certified fee and return fee and return receipt for mail addressed to both the District Attorney and to the Clerk of Judicial Records. In addition to these documents, he attached a document entitled "Offender Transaction History," showing deductions from his inmate account for the cost of first-class mail. *Id.* at 1249.

While this Court will accept a broad array of "reasonably verifiable evidence," we have stated that normally, the date on a filing "would be insufficient as proof that the prisoner mailbox rule applies herein." *Enoxh v. Carter* (Pa. Cmwlth., No. 243 C.D. 2022, filed Aug. 15, 2023), slip op. at 7 n.9, 2023 WL 5498755, at *4 n.9 (unreported)[7]; *Sitton v. Pennsylvania Parole Board* (Pa. Cmwlth., No. 1327 C.D. 2024, filed July 7, 2025), slip op. at 3. When a prisoner does not produce any of the types of evidence mentioned in *Sweesy*, or other "reasonably verifiable evidence" to establish a timely mailing, this Court has no choice but to quash the appeal for lack of jurisdiction.

---

[6] A late-filed appeal may be considered *nunc pro tunc* "if the delay in filing was caused by extraordinary circumstances involving fraud or breakdown in the administrative process or non-negligent circumstances related to the [petitioner], his attorney, or a third party." *McCullough v. Pennsylvania Board of Probation & Parole*, 256 A.3d 466, 471 n.5 (Pa. Cmwlth. 2021) (citation omitted). In the instant case, Petitioner has not requested that this Court consider his appeal *nunc pro tunc*.

[7] Under Section 414(a) of this Court's Internal Operating Procedures, an unreported opinion may be cited for its persuasive value. 210 Pa. Code § 69.414(a).

In *Brown v. Greene County District Attorney*, 255 A.3d 673, (Pa. Cmwlth. 2021), after the Court ordered an inmate to address the timeliness of his appeal under the prisoner mailbox rule, he merely stated in his brief that his appeal was timely filed on a particular date. In response to the lack of "reasonably verifiable evidence" presented with respect to timeliness, this Court stated:

> [g]iven the lack of substantive evidence regarding the date upon which [Appellant] sent his [notice of appeal] to [Greene] County, [this Court] could not accept [Appellant's] argument without engaging in speculation or conjecture. For us to do so would improperly relieve him of his burden to prove timeliness." (citation omitted). Consequently, [Appellant] has not met his "burden of proving that he timely deposited his . . . appeal in the prison mailbox." *Kittrell*, 88 A.3d at 1097. Accordingly, because [Appellant's] notice of appeal had to be filed by August 15, 2019, and the record evidence shows it was not filed until August 20, 2019, five days thereafter, this Court is without jurisdiction to hear the appeal.

*Id.* at 676. Similarly, in *Rashied v. Pennsylvania Parole Board* (Pa. Cmwlth., No. 1177 C.D. 2023, filed Nov. 18, 2024) (unreported), the prisoner presented no reasonably verifiable evidence to support his assertion of a timely filing. *Id.*, slip op. at 3. There, this Court concluded that the prisoner "benefits from the prisoner mailbox rule only to the extent of the postmark date on the Petition." *Id.* Because in that case, the petition was postmarked four days after the deadline, we could not accept the filing as timely. *Id.*, slip op. at 3-4.

Here, the Board's response to Petitioner's request for administrative relief was mailed to Petitioner on February 11, 2025. Pursuant to Pa.R.A.P. 1512(a)(1), Petitioner was required to file his Petition for Review with this Court within 30 days of the date the adjudication was mailed, *i.e.*, by March 13, 2025. However, Petitioner's *pro se* Petition for Review was received by the Prothonotary's Office and docketed with this Court on April 14, 2025. In addition, the envelope containing the Petition for Review was postmarked April 14, 2025.

In its Motion to Quash Untimely Appeal, the Board states that the filing date of Petitioner's appeal with this Court on April 14, 2025, clearly makes the petition untimely. The Board further notes that Petitioner does not offer any basis for, nor seek, *nunc pro tunc* relief. The Board therefore avers that the appeal must be quashed for failure to comply with Pa.R.A.P. 903, which requires that an appeal "be filed within 30 days after the entry of the order from which the appeal is taken." Pa.R.A.P. 903. (Motion to Quash ¶¶ 4, 8, 9-10.)

In Petitioner's Answer to the Board's Motion to Quash, he states that the Board is only entitled to summary relief if the right of the applicant is clear and no material facts are in dispute. (Petitioner's Answer at 1-2.) Petitioner contends that the Board's right to quash the appeal is not clear, because he provided an "affidavit" in his original *pro se* Petition for Review stating that he placed the petition in the prisoner mailbox at SCI-Chester on March 13, 2025. He also claims that he signed and dated a "proof of service," which he attached to his original *pro se* Petition for Review, stating that the Petition was placed in the mailbox on March 13, 2025. Therefore, he asserts this "evidence" creates a factual dispute as to the timeliness of the Petition's filing. (Petitioner's Answer at 3.) Petitioner argues that Pa.R.A.P. 105[8] provides that the Rules of Appellate Procedure are to be "liberally construed" and that the extreme action of dismissal should be imposed sparingly, particularly since Petitioner has substantially

---

[8] Rule 105(a) provides:

> **(a) Application.** These rules shall be liberally applied to secure the just, speedy, and inexpensive determination of every matter to which they are applicable. In the interest of expediting decision, or for other good cause shown, an appellate court may, except as otherwise provided in subdivision (b), disregard the requirements or provisions of any of these rules in a particular case on application of a party or on its own motion and may order proceedings in in accordance with its direction.

Pa.R.A.P. 105(a).

complied with the Rules of Appellate Procedure and the Board has suffered no prejudice. (Petitioner's Br. at 1-3.)

The Board responds that the April 14, 2025 postmark date should be deemed the filing date, in accordance with Pa.R.A.P. 121(f). (Board's Reply to Petitioner's Answer ¶¶ 5-10.) Moreover, the Board notes that the document that Petitioner refers to as an affidavit does not bear the Petitioner's signature, contains no language stating that it was made under penalty of perjury, and was neither notarized nor witnessed. (Board's Br. at 12-13.)

We begin by examining Petitioner's evidence in support of his claim that his Petition for Review was timely filed, which he refers to as an "affidavit." In *Commonwealth v. Chandler*, 477 A.2d 851 (Pa. 1984), our Supreme Court stated that, "[b]y definition, an affidavit is a statement of facts confirmed by oath before a judicial officer having authority to administer the oath." *Id.* at 853 (emphasis added). The definition of the term "affidavit" contained in 1 Pa.C.S. section 1991 is similar. It defines the term "affidavit" as follows:

> **"Affidavit".** A statement in writing of a fact or facts, **signed by the party making it, sworn to or affirmed before an officer** authorized by the laws of the Commonwealth to take acknowledgements of deeds, or authorized to administer oaths, or before the particular officer or individual designated by law as the one before whom it is or may be taken and officially certified to in the case of an officer under his seal of office.

1 Pa.C.S. § 1991 (emphasis added). Based on these definitions of the term, the document referred to by Petitioner as an "affidavit" is not in fact an affidavit. Most notably, this document bears no signature. Therefore, Petitioner's alleged affidavit does not qualify as "reasonably verifiable evidence" of the date that Petitioner deposited his appeal in the mailbox at SCI-Chester under *Sweesy* or any other relevant Commonwealth Court precedent.

10

This leaves Petitioner with only his alleged "proof of service," attached to his original *pro se* Petition for Review, as evidence of the date he placed the petition into the prison mailbox. However, the document that Petitioner refers to as his "proof of service" is actually the Certificate of Service accompanying his Petition for Review, which he himself signed and dated. As noted above, the date on a filing generally "would be insufficient as proof that the prisoner mailbox rule applies herein." *Enoxh*, slip op. at 7 n.9; *Sitton*, slip op. at 3; *Rashied*, slip op. at 3. In contrast to Petitioner's unsigned "affidavit," Petitioner's "proof of service" does have certain indicia of reliability in that it was signed by Petitioner and it complies in certain respects with Pa.R.A.P. 121 and Pa.R.A.P. 122. Nevertheless, we find that on balance, it does not rise to the level of "reasonably verifiable evidence."[9] Therefore, unlike the appellant in *Jones* and *Barros*, Petitioner has provided no reasonably verifiable evidence showing that he timely provided his petition to prison authorities or placed it in the prison mailbox. We also note that the timeliness discussion in his brief does not assert that he could provide such evidence if given a further opportunity to do so.

Because Petitioner has not met his burden to prove the timeliness of the submission of his Petition for Review to this Court, we are left with only the postmark

---

[9] Petitioner's proof of service complies to a certain degree with the requirements of Pa.R.A.P. 121(d) relating to proof of service and Pa.R.A.P. 122(b) governing the Form of Proof of Service. Unfortunately, the document fails to state that Petitioner "**certifies** that I am **this day serving** the foregoing document . . . , which service satisfies the requirements of Pa.R.A.P. 121." Pa.R.A.P. 122(b). A note to this rule states that "[u]nder 18 Pa.C.S. § 4904 (unsworn falsification to authorities) a knowingly false proof of service constitutes a misdemeanor of the second degree, suggesting that a proof of service conforming with the relevant Rules of Appellate Procedure could be considered reasonably reliable evidence. Petitioner here, however, contends that his Petition for Review was timely filed under Pa.R.A.P. 121(f) (the prisoner mailbox rule). Without a cash slip or other corroborating evidence of the date of deposit in the prison mailbox, we cannot conclude that Petitioner's nonconforming proof of service constitutes "reasonably verifiable evidence" of the date the Petition was placed in the prison mailbox, as required by Pa.R.A.P. 121(f). We therefore are constrained to rely on the prison postmark as the date of the Petition's filing under Pa.R.A.P. 121(f).

date of April 14, 2025, as evidence of the deposit of the petition into the prison mailbox. As noted previously, Pa.R.A.P. 121(f) provides:

> A *pro se* filing submitted by a person incarcerated in a correctional facility is deemed filed **as of the date of the prison postmark or** the date the filing was delivered to the prison authorities for purposes of mailing **as documented by a properly executed prison cash slip or other reasonably verifiable evidence.**

(emphasis added). The postmark date, however, renders Petitioner's Petition for Review facially untimely because it is dated April 14, 2025.[10] Petitioner's appeal was due March 13, 2025. Therefore, according to the postmark, Petitioner's Petition for

---

[10] The untimeliness of Petitioner's appeal to this Court is jurisdictional and dispositive. However, we note that even if we had determined that Petitioner's Petition for Review had been timely filed, we would have denied his appeal. Petitioner's argument that he is entitled to additional credit on his original sentence from the period from July 15, 2024, the date of sentencing for his new criminal charges, until the date he was transported to the SCI on September 11, 2024, fails for lack of evidence. (Petitioner's Br. at 14.) While Petitioner asserts that he was paroled from his new sentence on July 15, 2024, the certified record contains no probative evidence of this fact, such as a parole order from the trial judge or an order of release onto parole. Petitioner mentions neither of these documents in its Petition for Review or in his request for administrative relief from the Board's revocation decision.

The only evidence of record that Petitioner cites as evidence that he was paroled on the same day he was sentenced is a record showing that a document entitled "General Rules, Regulations and Conditions Governing Adult Probation/Parole" was provided on the day that he was sentenced. This document also lists the judge's order imposing his sentence and a document stating that a guilty plea was negotiated. (C.R. at 41.) However, this document does not prove that Petitioner was **paroled** on that date because Petitioner was sentenced to both a period of confinement and **to a one-year period of probation to run concurrently with his period of incarceration**. Therefore, the issuance of a document concerning the "General Rules, Regulations and Conditions Governing Adult **Probation**/Parole" to a prisoner who has just been sentenced to a period of probation does not clearly indicate that Petitioner was paroled on the date the document was provided to him.

Finally, we note that the Board sent a letter to the trial court judge requesting that in the event the trial court intends to parole Petitioner and make him available to the Board, the trial court should send such an order to the Board. It further stated that if the Board did not receive such an order, it "we will presume the offender [was] paroled effective the date he/she was returned to an SCI." (C.R. at 65.) The response to this letter stated that Petitioner had completed his county sentence and was returned to SCI-Smithfield and was available to go in front of the Board. (C.R. at 67.) The date of Petitioner's return to SCI-Smithfield was September 11, 2024, which is the date used by the Board to calculate Petitioner's maximum sentence date.

Review must be deemed filed on April 14, 2025, which was 32 days after Petitioner's deadline date of March 13, 2025, for filing his Petition for Review.

**IV. Conclusion**

For the foregoing reasons, the Board's Motion to Quash is granted and the appeal is quashed for lack of jurisdiction due to its untimeliness.

_____
PATRICIA A. McCULLOUGH, Judge

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Denzil Wagoner, III, :
             Petitioner :
              :
             v. : No. 494 C.D. 2025
              :
Pennsylvania Parole Board, :
             Respondent :

## ***ORDER***

AND NOW, this 2nd day of June, 2026, the Parole Board's Application for Summary Relief and Motion to Quash Untimely Appeal is GRANTED, and Petitioner's Petition for Review is QUASHED as untimely filed.

_____
PATRICIA A. McCULLOUGH, Judge